# FRANKLIN *v.* STATE OF SOUTH CAROLINA.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 164. Argued April 20, 21, 1910.—Decided May 31, 1910.

On writ of error to review a judgment of conviction of the state court this court has no jurisdiction to notice errors other than those which involve alleged violations of Federal rights. The States have the right to administer their own laws for the prosecution of crime so long as fundamental rights secured by Federal law are not denied.

Whether provisions as to qualifications of jurors and electors in subsequently adopted constitution and subsequently enacted laws of one of the States enumerated in the act of Congress of June 25, 1868, c. 70, 15 Stat. 73, providing that the constitution of such States should never be amended so as to deprive citizens of the United States of their rights as electors, violate such act will not be determined at the instance of a person convicted of crime unless it appears that persons qualified under the Federal act were disqualified and thereby prevented from serving on the jury by the constitution and laws the validity whereof is attacked.

*Quære* whether the act of June 25, 1868, c. 70, 15 Stat. 73, does restrict the States enumerated therein in fixing the qualifications for suffrage within such States respectively.

Where the real objection is that a grand jury is so made up as to exclude persons of the race of accused the facts establishing the contention must be averred and proved. *Martin* v. *Texas*, 200 U. S. 316.

Where the state court has held that under the state jury law the commissioners are only required to select men of good moral character and that competent negroes are equally eligible with others, this court cannot hold that a negro is denied equal protection of the law by reason of the statute because the commissioners have not selected any negroes for the grand jury which indicted him; and so held as to the jury law of 1902 of South Carolina.

The granting and denial of continuances are matters within the discretion of the trial court and are not ordinarily reviewable; in this case the refusal to grant a continuance did not amount to a denial of due process of law to the accused.

*Quære,* and not decided in this case, to what extent one can resist arrest under process issued under a void or unconstitutional law.

Where one about to be arrested by an officer of the law under process
    issued under a law which is unconstitutional shoots the officer upon
    his entering the room, the question of right of resistance to arrest is
    for the jury and the accused is not entitled to a peremptory in-
    struction of dismissal, nor is he denied due process of law under the
    Fourteenth Amendment by the refusal of the court to give such in-
    struction because the process was issued under a statute violative
    of the Thirteenth Amendment to wit, § 357 of the Criminal-Code of
    South Carolina in regard to agricultural contracts.
80 So. Car. 332, affirmed.

THE facts are stated in the opinion.

*Mr. Jacob Moorer* and *Mr. John Adams,* for plaintiff
in error.

*Mr. Charles J. Bonaparte* submitted a supplemental
brief for plaintiff in error.

*Mr. J. Fraser Lyon,* Attorney General of the State of
South Carolina, and *Mr. D. S. Henderson,* with whom
*Mr. C. M. Efird* and *Mr. B. H. Moss* were on the brief,
for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

The plaintiff in error, Pink Franklin, a citizen of the
negro race, was convicted, in the Court of General Ses-
sions for the county of Orangeburg, South Carolina, of
the crime of murder by the shooting of one H. E. Val-
entine; thereupon he was sentenced to suffer the death
penalty, and upon appeal to the Supreme Court of South
Carolina the judgment of the Court of General Sessions
was affirmed. *State* v. *Franklin,* 80 So. Car. 332. The
case is here upon a writ of error to the Supreme Court of
South Carolina.

The record discloses that the homicide occurred upon
the attempt of H. E. Valentine, a constable, to arrest
Franklin upon a charge of "having violated and broken

an agricultural contract," against the form of a statute made and provided in such cases in the State of South Carolina. The statute referred to is § 357 of the criminal code of South Carolina, which provides:

"Any laborer working on shares of crop or for wages in money or other valuable consideration under a verbal or written contract to labor on farm lands, who shall receive advances either in money or supplies and thereafter wilfully and without just cause fail to perform the reasonable service required of him by the terms of said contract, shall be liable to prosecution for a misdemeanor, and on conviction shall be punished by imprisonment for not less than twenty days nor more than thirty days, or to be fined in the sum of not less than twenty-five dollars nor more than one hundred dollars, in the discretion of the court: *Provided,* The verbal contract herein referred to shall be witnessed by at least two disinterested witnesses."

Upon the filing of the complaint before a magistrate what is termed an arrest warrant was issued directed to Henry E. Valentine, as special constable, commanding him to apprehend the plaintiff in error because of the alleged violation of the agricultural contract, and to bring him before the magistrate to be dealt with according to law.

As it becomes necessary, in considering the Federal questions raised in the record, to know the facts concerning the homicide we take occasion to briefly summarize such as are pertinent. The testimony offered for the State and that offered for the plaintiff in error differed widely as to what occurred at the time the constable was shot. The record discloses that about the time of the attempted arrest Valentine, the constable, summoning one Carter to assist him, about three o'clock on the morning of the homicide proceeded to the farm of one Spires, who lived near to Franklin's house, and requested him to induce Franklin to go to his house that he might be there arrested.

Accordingly, Spires went to Franklin's, and, having aroused him, asked him to do some plowing for him. Franklin replied that he would do the plowing that afternoon, but could not work for Spires that morning. Thereupon Valentine and Carter went to Franklin's house to make the arrest. For the State the testimony tended to show that the door of Franklin's house and the inner door of his bedroom were open; that Valentine rapped with a knife on the steps of the house, and called to Franklin, and received no response; that Valentine thereupon directed Carter to go around the house, which he did; and Valentine, entering the door, was instantly shot by Franklin, and Valentine's pistol was seized and wrung from his hand; that after he was shot a colored woman came in with an axe and said that she had a good will to finish up the job; that Carter, upon hearing the pistol shots, which were fired in rapid succession, ran around the house, and was caught by the leg by Franklin's son, a small boy; that upon entering the house he, too, was shot, receiving a slight wound.

On the other hand, the accused testified that he had no acquaintance with Valentine; that he did not know that he was an officer of the law and armed with a warrant for his arrest; that he heard nothing until the door was hurled open, and Valentine said to him "Hands up!" that he (Franklin) did not move; that Valentine shot him, inflicting a wound in his shoulder; that he fell down by his pallet, got his gun, and fired, intending to get out of the way, and did get out as fast as he could.

In a proceeding of this kind this court has no jurisdiction to notice other errors than those which involve alleged violations of Federal rights secured by the Constitution of the United States or Federal statutes. The States have the right to administer their own laws for the prosecution of crime, and the jurisdiction of this court extends only to the reversal of such state proceedings

where fundamental rights secured by the Federal law have been denied by the proceedings in the state courts. *Rogers* v. *Peck*, 199 U. S. 425, 434, and cases there cited.

We will proceed then to examine the errors assigned which may be fairly said to raise Federal questions reviewable here. A motion was made to quash the indictment because of the disqualification of the grand jury which returned it. The argument being that the Federal act of June 25, 1868, c. 70, 15 Stat. 73, provides that the constitutions of certain States, including South Carolina, should never be amended or changed so as to deprive any citizen, or class of citizens of the United States, of the right to vote in said State given to them by the constitution thereof named in the act, except for the punishment for crimes such as are now felonies at common law, whereof they shall have been duly convicted under laws equally applicable to all the States. The necessary qualifications of voters in South Carolina at that time were defined in § 2, art. 8, of the constitution of South Carolina of 1868, and were: "Every male citizen of the United States of the age of twenty-one years and upward, not laboring under the disabilities named in this constitution, without distinction of race, color or former condition, who shall be a resident of this State at the time of the adoption of this constitution, or who shall reside thereafter in this State one year and in the county in which he offers to vote sixty days next preceding any election, shall be entitled to vote for all officers that are now or hereafter may be elected by the people, and upon all questions submitted to the electors at any election: *Provided*, That no such person be allowed to vote or to hold office who is now or hereafter may be disqualified therefor by the Constitution of the United States until such disqualification be removed by Congress of the United States: *Provided further*, That no person while kept in any almshouse or asylum, or of unsound mind, or confined in any public

prison, shall be allowed to vote or to hold office." These qualifications for voters were changed by the constitution of 1895, and now are:

·"Art. 2, Sec. 4. The qualification for suffrage shall be as follows: '(a) residence in the State for two years, in the county one year, in the polling precinct in which the elector offers to vote, four months, and the payment six months before any election of any poll tax then due and payable; . . . (d) Any person who shall apply for registration after January first, 1908, if otherwise qualified shall be registered: Provided, That he can both read and write any section of this constitution submitted to him by the registration officer, or can show that he owns and has paid all taxes collectible during the previous year on property in this State assessed at three hundred dollars ($300) or more.' "

This change in the qualification for voters, it is said, worked a deprivation of the rights of the accused, because the qualification of grand jurors under the constitution of 1895, they being required to be electors of the State, made eligible different persons than those who were qualified to be electors under the constitution of 1868. As to this contention the South Carolina Supreme Court held that the constitution of 1895 laid no restriction on color or previous condition to entitle one to be an elector; that the act of Congress of 1868 had no reference to the selection of jurors, and that it was inapplicable to the constitution of the State in regard to juries.

If it could be held that the act of Congress restricted the State of South Carolina in fixing the qualifications for suffrage it is unnecessary to decide the point in this case, as there is nothing in the record to show that the grand jury, as actually impanelled, contained any person who was not qualified as an elector under the constitution of 1868, nor is there anything to show that the grand jury was so made up as to prevent citizens of the race of the

plaintiff in error from sitting thereon. There was no allegation in the motion to quash upon this ground or offer of proof in the case to show that persons of the African race were excluded because of their race or color from serving as grand jurors in the criminal prosecution of a person of that race, therefore the case does not come within the rule laid down in *Carter* v. *Texas*, 177 U. S. 442; *Rogers* v. *Alabama*, 192 U. S. 226, and kindred cases. Moreover, if the restriction upon the right to fix qualifications for suffrage in the Federal act could have the effect contended for as to subsequent state action, there was nothing in the act to prevent the selection of grand jurors having the qualifications prescribed for electors in the constitution of 1895, in the absence of a showing that such legislation operated to exclude citizens from such juries on account of race. *In re Shibuya Jugiro*, 140 U. S. 297, 298. In this class of cases when the real objection is that a grand jury is so made up as to exclude persons of the race of the accused from serving in that capacity it is essential to aver and prove such facts as establish the contention. *Martin* v. *Texas*, 200 U. S. 316.

It is next contended, concerning the jury law of South Carolina, that it confers arbitrary power upon the jury commissioners in selecting jurors. Section 2 of the act of 1902 provides (p. 1066):

"They [the jury commissioners] shall . . . prepare a list of such qualified electors under the provisions of the constitution, between the ages of twenty-one and sixty-five years, and of good moral character, of their respective counties as they may deem otherwise well qualified to serve as jurors, being persons of sound judgment and free from all legal exceptions, which list shall include not less than one from every three of such qualified electors," etc.

We do not think there is anything in this provision of the statute having the effect to deny rights secured by the Federal Constitution. It gives to the jury commissioners

the right to select electors of good moral character, such
as they may deem qualified to serve as jurors, being per-
sons of sound judgment and free from all legal exceptions.
There is nothing in this statute which discriminates against
individuals on account of race or color or previous condi-
tion, or which subjects such persons to any other or dif-
ferent treatment than other electors who may be qualified
to serve as jurors. The statute simply provides for an
exercise of judgment in attempting to secure competent
jurors of proper qualifications. *Murray* v. *Louisiana*,
163 U. S. 101, 108; *Gibson* v. *Mississippi*, 162 U. S. 565,
589.

Under this statute the Supreme Court of South Caro-
lina held that the jury commissioners were only required
to select men of good moral character, and that competent
colored men were equally eligible with others for such
service. We find no denial of Federal rights in this pro-
vision of the statute.

It is next contended that the plaintiff in error was
denied due process of law in the refusal of the court to
continue his case when the same was called for trial. It
is elementary that the matter of continuance rests in the
sound discretion of the trial court, and its action in that
respect is not ordinarily reviewable. It would take an
extreme case to make the action of the trial court in such
a case a denial of due process of law. A continuance was
asked for because, it was alleged, the counsel for the ac-
cused had not had sufficient time or opportunity to ex-
amine the notes of the testimony taken before the coroner
who investigated the case. The record discloses that, in
support of the motion to continue, counsel for the plain-
tiff in error made affidavit that two weeks before the
beginning of the term he had called upon the clerk of
the court and asked to see the testimony taken before the
coroner, and that the clerk had informed him that the
coroner kept his book in a room upstairs, but that the

room was locked at the time; that the plaintiff in error's
counsel thereupon made a search for the coroner, and that,
failing to find him, he called upon the solicitor for the
State, and asked him if he had the original testimony,
and the same was handed him, which testimony was
partly in shorthand, and, the stenographer who took the
same being out of town at the time, counsel for the ac-
cused could, therefore, not get a proper and intelligent
reading of the testimony.  Counsel for the accused fur-
ther deposed that he called upon the deputy sheriff and
asked him to go into the room used by the grand jury at
the time to get the coroner's book.  This was on Tuesday
or Wednesday of the week of the trial.  He found upon
examination that the testimony had not been copied into
the coroner's book, and that, therefore, the counsel were
not enabled to read and become familiar with the testi-
mony "absolutely needed for contradiction on the trial
of such causes."  Counsel for the State stated in this con-
nection that when the attorney for the accused came to
his office and asked for the coroner's inquisition he handed
to him the papers in the case, telling him at the time that
he did not know whether he could read them or not, be-
cause they were written in a kind of short or running
hand; that he had suppressed no record in the case, and
had given the counsel all the records which he had; that
the record was written in a kind of running long hand;
that the young man who took the testimony was out of
town at the time, and that he had so stated.  Upon this
showing the court declined to continue the case.  Cer-
tainly there was no deprivation of due process of law in
this action.

It is next contended that the court erred in refusing to
direct a verdict upon motion of the defendant's counsel
at the close of the testimony, because the warrant on
which the deceased attempted to arrest the plaintiff in
error was null and void, because the act under which it

was issued was unconstitutional, and this, so far as Federal questions are concerned, because it was in violation of Article IV of, and repugnant to the Thirteenth and Fourteenth Amendments to, the Federal Constitution. Responding to this motion to direct an acquittal, the court said:

"It is not necessary to argue that point further, even if you were to establish the fact that the warrant was null and void, or even if the man had no warrant at all it would not be competent for the court to direct a verdict in favor of the defendant Pink Franklin, and the motion is refused. I will also leave it to the jury as to the guilt or innocence of the other defendant. I don't care to discuss the matter, but I do not apprehend that it is a case in which the court ought to direct a verdict in case of either of the defendants, and the motion is therefore refused."

The only Federal question raised in this connection is found in this denial of the motion to direct a verdict in favor of the accused, because the statute under which he was sought to be arrested was void under the Federal Constitution, and the warrant issued for his arrest under such unconstitutional law therefore void and of no effect. That the statute under which the proceedings were had and the warrant issued is unconstitutional was held by the Supreme Court of South Carolina in *Ex parte Hollman,* 79 So. Car. 1. In that case the court reached the conclusion that the statute in question not only violated the constitution of the State, but was in contravention of the Thirteenth and Fourteenth Amendments to the Constitution of the United States and § 1990 of the Revised Statutes of the United States, known as the peonage statute. See *Clyatt* v. *United States,* 197 U. S. 207.

But an inspection of this record does not disclose that by any request to charge, or otherwise, any advantage was sought to be taken of the unconstitutionality of the act other than is found in the request for the peremptory

instruction to acquit the accused. Even if one attempted to be arrested under process issued under a void and unconstitutional law has the right to resist arrest, even to the taking of human life, a point we do not find it necessary to decide, the case could not have been taken from the jury upon the testimony disclosed in this record. The right to make such resistance to the officer, under the circumstances here shown, must have been left to the determination of the jury under proper instructions. In this case, if the State's testimony is to be believed, the accused without any warning, or resorting to any other means of resistance, and after the constable had knocked for admission, shot the officer upon his entering the open door armed with a supposed warrant of arrest. Upon this showing the case could certainly not be taken from the jury because of any supposed right to resist with all necessary force an unlawful arrest because of the invalidity of the statute or the warrant issued in pursuance thereof.

It was insisted in the oral argument of this case, and an elaborate brief was filed by eminent counsel, making the contentions that the proceedings for the arrest of the accused were in violation of the Thirteenth Amendment to the Constitution and of § 1990 of the Revised Statutes of the United States, abolishing and prohibiting peonage, and declaring null and void the resolutions, regulations and usages of any State or Territory in that respect; and that they were in violation of § 5526 of the Revised Statutes of the United States, punishing any person who holds, arrests or returns, or causes to be held, arrested or returned, or in any way aids in the arrest or return of any person to a condition of peonage, and were in violation of the Thirteenth Amendment. This being so, and the statute and the warrant being illegal and void, the accused, it is contended, had the right to use all reasonable force to protect his person, his liberty and his habi-

tation from such unlawful arrest, and that, therefore, the firing of the fatal shot was only a reasonable use of force for the defense of the accused under the circumstances shown.

But, as we have said, the only attempt to raise questions of a Federal character concerning the validity of the statute and the warrant under which it was issued, and the right to resist arrest under such warrant, was in the request for a peremptory instruction for an acquittal. Even upon the theory of his rights now advanced he was not entitled to a peremptory instruction taking the case from the jury.

The Supreme Court of South Carolina considered and overruled certain grounds of appeal, which embrace objections to the charge. But we do not find in these rulings any determination of Federal questions adverse to the plaintiff in error which would warrant a reversal of the judgment by this court. These rulings were upon questions of general law, concerning which no Federal right was asserted and denied as is essential to enable this court to review the judgment of a state court.

After giving this case the examination its importance deserves, in view of its gravity, we are unable to find in the record anything which worked a deprivation of Federal rights warranting this court in disturbing the judgment of the Supreme Court of South Carolina, and the judgment is affirmed.

*Affirmed.*