## McFEE v. UNITED STATES.

### No. 13482.

United States Court of Appeals
Ninth Circuit.

Aug. 24, 1953.

Harold S. Purdy, Coeur d'Alene, Idaho, J. F. Emigh, Butte, Mont., Elden McFarland, Washington, D. C., and James P. Keane, Wallace, Idaho, for appellant.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Meyer Rothwacks, John Lockley, Sp. Assts. to Atty. Gen., Washington, D. C., John A. Carver, U. S. Atty., Boise, Idaho, Dudley L. Wilson, Sp. Asst. to U. S. Atty., Spokane, Wash., W. W. Patten, Sp. Asst. to U. S. Atty., Seattle, Wash., John Lockley, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before MATHEWS, HEALY and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellant was tried and convicted by a jury on two counts of an indictment for wilful attempts to defeat and evade income taxes due and owing by him for the years 1945 and 1946 in violation of § 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b). He was sentenced to imprisonment for one year and six months and a fine of $7,500 on each count, the terms of imprisonment to run concurrently; the imprisonment on count two to be suspended and appellant placed on probation for two years commencing after service of sentence on count one on the condition that appellant pay the amounts due the government on income tax.

The judgment is challenged upon numerous grounds and we consider each contention in the order set forth in appellant's brief. The pertinent facts are set out in our consideration of each assignment of error.

### I. Denial of Continuance.

Appellant urges that the trial court erred in denying him a continuance. The indictment was returned November 8, 1951. Appellant was arrested November 17, 1951. He was arraigned April 1, 1952 and on that date the case was set for trial for April 22, 1952. On April 1, 1952 appellant asked for a bill of particulars. The bill of particulars was furnished April 2, 1952. Appellant asserts that it was not until then that he and his attorneys were advised that the Government had adopted the expenditure method of computing his income and tax. On April 4th he moved for a continuance and supported his motion with affidavits made by each of his two attorneys wherein they detailed certain investigations which they desired to make and to cause to be made in preparation for trial, which investigations, they averred, could not be accomplished within the time remaining before trial. "It is elementary that the matter of continuance rests in the sound discretion of the trial court, and its action in

that respect is not ordinarily reviewable. It would take an extreme case to make the action of the trial court in such a case a denial of due process of law." Franklin v. State of South Carolina, 218 U.S. 161, 168, 30 S.Ct. 640, 643, 54 L.Ed. 980.

■ This is by no means an extreme case. The affidavits filed by counsel in support of the motion present no facts from which a reasonable inference could have been drawn that substantial evidence supporting a defense would have been discovered. The showing, at most, was a request for time in which to make a search for new evidence. For some months prior to indictment appellant was represented by a firm of certified public accountants and by counsel. Surely, if a reasonable probability existed that a continuance would have enabled appellant to procure evidence not then known to him, a better showing would be expected in view of the expert assistance he had at hand and because of their presumed familiarity with his affairs. We see no prejudice resulting to appellant from the denial of a continuance. As a matter of fact the trial court exercised its discretion wisely by furthering an expeditious trial of the case. Such action is to be encouraged where, as here, the rights of a defendant are not jeopardized.

## II. Sufficiency of the Evidence.

In determining appellant's income the Government used both the expenditure and net worth methods. The two computations are merely accounting variations of the same basic method, the expenditure theory being an outgrowth of the net worth method. U. S. v. Caserta, 3 Cir., 1952, 199 F.2d 905. Both involve a determination of the taxpayer's net worth at the beginning and end of a period in order to foreclose the possibility that the expenditures were made or the net worth increases were derived from prior accumulated funds. The underlying theory of the expenditure method is that if expenditures exceed reported income for the period and net worth has remained constant or changes otherwise accounted for, an inference may be drawn that total income was not properly reported. The theory of the net worth method is that if a taxpayer's net worth at the end of a particular period is greater than his net worth at the beginning of the period, and such increment is not attributed to gifts, devises, loans, or other non-income sources, the conclusion may be drawn that the increase in net worth represents income to the taxpayer. The net worth and expenditure computations of the Government both tended to show that appellant had failed to report taxable income of $79,-911.23 in 1945 and $70,769.76 in 1946.

Appellant does not deny that his expenditures for the two years in question greatly exceeded his reported gross incomes. He asserts, however, that the Government's case must fall because it failed to establish a firm starting point for its determination of his net worth. He challenges the accuracy of the prosecution's computations first on the ground that the Government failed to exclude the hypothesis of funds other than income from which the substantial expenditures could have been made, and second, on the ground that certain known assets were omitted from the net worth statements.

■ Appellant contends, and we agree, that in a net worth case the. Government must establish with a reasonable degree of accuracy the taxpayer's net worth at the beginning and end of the period in question. We think this requirement was fully and adequately met in this case. There is no exclusive set of circumstances to foreclose the prior accumulation hypothesis. How much evidence must be offered by the prosecution before the trial court can properly submit the case to the jury depends upon the facts of the particular case. Remmer v. United States, 9 Cir., 1953, 205 F.2d 277. The Government is not required to refute all possible speculations as to the sources of funds from which the expenditures might have been made. Gariepy v. United States, 6 Cir., 1951, 189 F.2d 459. We view the evidence in the light most favorable to the Government and affirm if the evidence is sufficient to justify the jury in finding therefrom, beyond a reasonable doubt, that there has been a wilful attempt to evade taxes. Gendelman v. United States, 9 Cir., 1951, 191 F.2d 993.

In the instant case the establishment of appellant's net worth as of the beginning of the year 1945 was thorough and in detail. The revenue agents began their inquiry with the year 1935 and traced appellant's financial history through 1946. There was evidence that in 1934 and 1935 appellant moved from a $1.50 a day hotel room to the back room of a cinderblock building where he cooked his own meals to save expenses, that he was employed in a meat market at $50 to $60 a week, that he began the operation of North Idaho Sales Company about 1936 in partnership with his daughter with a maximum capital investment of $2,000, that the bank account was not always sufficient to cover a $12 a week check paid to an employee, that he filed no income tax returns in Idaho prior to 1936. From these facts the jury was entitled to infer that appellant was not in the possession of substantial assets as of the year 1935. The Government produced appellant's income tax returns and established the amount of income reported for the years 1936 to 1945 to negative the likelihood of his having accumulated a large surplus in those years. The agents examined appellant's records and books, bank accounts, court and county records to determine if there were any other possible sources of funds. He was given credit for all known borrowings and such amounts were eliminated from the income computations. The investigation was as full and complete as the Government could be reasonably required to make.

This evidence is substantial. The net worth computation was necessarily an estimate but, as such, was competent for the consideration of the jury. The Government's case is not destroyed by argumentative speculation, unsupported by evidence, that he might have had other substantial assets not taken into account by the Government. Appellant's voluntary admissions to the revenue agents that he had received no inheritances, that he had no other source of income than the known assets, and that $50,000 was all he had on hand as of January 1, 1942, serve only to corroborate the accuracy of the net worth statements.

Another argument of appellant in which we find no substance is that there was fatal variance because the Government did not establish the exact source of the unreported income. The law is clear that proof of the exact amount or precise source of unreported income is not required. Jelaza v. United States, 4 Cir., 1950, 179 F.2d 202; Gariepy v. United States, 6 Cir., 1951, 189 F.2d 459. The jury was entitled to infer from the evidence that the unreported income came from one or all of the sources specified in the bill of particulars.

Appellant further attempts to attack the accuracy of the net worth statements by showing that certain known assets were omitted. There was testimony that the revenue agents were advised that appellant in 1943 personally had on hand approximately $114,000 in cash which he spent for liquor and which was not recorded on his business books. Substantial evidence appearing in the record justifies the inference that no such asset existed. The revenue agent testified that he did not give appellant credit for this item because it represented numerous purchases of whiskey and not a single transaction. Any whiskey on hand in 1945 was included in the net worth statement as inventory. He further testified that appellant informed him that this item would be accounted for on the Foresters Club books and that it related to whiskey inventory turnover. The contradictory and highly questionable testimony of R. E. McDonnell was the only affirmative evidence concerning this transaction. At one point during his testimony the trial court found it necessary to caution the witness against testifying falsely. The jury no doubt disbelieved McDonnell.

Two other items allegedly improperly omitted need no extended treatment since, even if we were to assume that appellant's contention is correct, the total amount involved could not affect the result. The challenged items amount to approximately $23,000 whereas the Government computations disclose a failure to report approximately $80,000 in 1945 and $70,000 in 1946. The Government is not required to prove the defendant's guilt to a mathematical

certainty. Schuermann v. United States, 8 Cir., 1949, 174 F.2d 397.

■ Appellant also claims that the two net worth statements were highly prejudicial to him because they both contain entries showing that he paid no income tax in 1945 or 1946 when in fact he did pay taxes for these two years. It is true that appellant overpaid his income taxes in 1944 and received a credit of $25,879.94 which was applied to his 1945 and 1946 taxes. The record does not disclose the year in which he received the income tax credit. Appellant concedes, however, that the treatment given this item by Government accounts had no affect whatever on the net worth computation. His complaint is that it was prejudicial to send to the jury statements which showed that he had paid no federal income tax during the two years in issue. We find no merit in this contention. It is clear that the jury had before it abundant evidence that appellant had paid taxes in these years. Appellant himself introduced a letter from the Treasury Department crediting him with the overpayment of his taxes. His income tax returns were in evidence and there was testimony by a revenue agent that appellant had applied the tax refund to his 1945 and 1946 taxes.

### III. Confidential Communications.

Two lawyers, Messrs. Keane and Stern, who had on different occasions represented appellant, were called as witnesses by the Government and requested to testify. They made objection on the ground that the matters concerning which they were questioned were privileged because at that time the relationship of attorney and client existed between them and appellant. Their objections were overruled and answers were then given. Lawyer Keane testified to the effect that he had obtained $12,500 in currency from appellant on January 28, 1946, with instructions to purchase a cashier's check; that he had his secretary do so, and that another $3,000 check was handled the same way. On March 21, 1946, he received another $9,000, mostly in currency, of which he paid $7,500 for a cashier's check and gave $1,500 to Stern.

He also testified about a $5,500 note receivable and a $4,700 check payable to McDonald, for which appellant advanced funds.

Lawyer Stern testified to the effect that he deposited $12,500 in the Dakota National Bank at Fargo, North Dakota, which was used partially to make payments to the District Court of the United States. He testified that he cashed a $3,000 check and gave the funds to appellant.

The Government's purpose in eliciting the evidence from the lawyers was to show as a part of the expenditures that the sum of $16,500 was used by appellant in payment of fines in 1946.

■ We see no confidential relationship between attorney and client in the above transaction. The attorneys acted in the capacity of a transmitter, not as lawyers giving legal advice. The lawyers stand in the same relation as would a banker had one been commissioned by appellant to carry out what appears to be no more than clerical and messenger service. Pollock v. United States, 5 Cir., 1953, 202 F.2d 281; cf. United States v. De Vasto, 2 Cir., 1931, 52 F.2d 26, 78 A.L.R. 336.

### IV. Failure of Court to give Requested Instructions on Circumstantial Evidence.

Appellant assigns as error the failure of the Court to give a requested instruction on circumstantial evidence.

Appellant makes a statement on page 21 of his brief that he excepted to the instructions given by the Court on circumstantial evidence. After setting out the instructions given by the Court it is stated:

"Counsel for defendant excepted to the above instructions as follows:

"Mr. Emigh. We would like an exception to the failure of the Court to give the requested instruction that not only must the evidence prove guilt but that it must prove the hypothesis of guilt to the exclusion of all other hypotheses.

"The Court. You may have your exception."

■ It is apparent that the exception was directed to a requested instruction not given by the Court and not to the instructions given. The instructions given by the Court on circumstantial evidence, to which no exception was taken, states the law with much more clarity and force than does the alleged proffered instruction which the Court rejected. The jury was adequately instructed on this point.

### V. Comment of the Court.

During the course of its instructions to the jury the Court stated:

"You are instructed that if you find substantial evidence outside of the defendant's own statements consisting of increase of net worth during the taxable years or any absence of personal records or books of account or the failure of books and records to show fully its transactions or those of the defenddant then this body of testimony derives support from the defendant's failure to offset or explain the discrepancy through whatever means he might do so.

"I don't want to comment on the evidence but there is one outstanding matter that you are left in the dark about, I don't intend to make any inference about it, as the evidence here is solely for you. But where are the tickets that should show the receipts and division of the money taken from the slot machines for the years 1945 and 1946? There was only one of these books of tickets introduced in evidence by the defense. None of the witnesses, bookkeeper, manager or other witnesses for the defense produced these tickets and all said they had no knowledge of these tickets. The tickets were traced to the possession of defendant McFee. It seems to the Court that if the tickets balanced with the bank account that it would have been an easy matter for the defense to produce the tickets if they have not been destroyed. Why were they not produced to show the receipts of the slot machines for these years?"

Appellant objected to the statements of the Court concerning the "tickets" and has assigned it as error.

The Court further charged the jury as follows:

"Ladies and Gentlemen of the Jury; when I instructed you I made some comment concerning the failure of the defendant to produce these sales slips or tickets, check on the slot machines, or receipts from the slot machines. You understand that you are not to draw any inference from the Court's remarks, these are questions of fact for the jury, and you are not to be influenced by any remarks by the Court as to what the Court thinks about the testimony."

And the Court gave the further cautionary instruction:

"If the Court has inferred, or if you should have gathered during the trial of the case that the Court has some opinion as to the facts in this case you will disregard that entirely. The matter of the guilt or innocence of the defendant as based on the facts presented to you here is a matter for your determination and yours alone and the Court has not intended to infer at any time that he had any feeling on the matter."

Other instructions were given where the function of the jury to pass upon the facts of the case was stressed.

■ Viewing the instructions of the Court as a whole, the statements complained of were not beyond the bounds of judicial propriety. United States v. Aaron, 2 Cir., 1951, 190 F.2d 144, certiorari denied, sub nomine Freidus v. United States, 342 U.S. 827, 72 S.Ct. 50, 96 L.Ed. 626; Todorow v. United States, 9 Cir., 1949, 173 F.2d 439, certiorari denied, 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733; Simon v. United States, 4 Cir., 1941, 123 F.2d 80, certiorari denied 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555. It is obvious that the jury was clearly informed that it was left free to perform its fact-finding functions.

### VI. Admissibility of Evidence of Admissions.

■ Error is claimed in the admission of the testimony of agents of the Bureau of Internal Revenue as to state-

ments made to them by appellant. This testimony, asserts appellant, was inadmissible because there is in the record no substantial independent proof of the *corpus delicti*. A reading of the record convinces us that not only does the independent evidence substantially corroborate the admissions, which in this circuit is sufficient, Davena v. United States, 9 Cir., 1952, 198 F.2d 230, but, contrary to appellant's contention, goes further and establishes the *corpus delicti* . by competent independent evidence.

Judgment affirmed.