**PAPADAKIS v. UNITED STATES.**
No. 13772.

United States Court of Appeals,
Ninth Circuit.

Dec. 21, 1953.

Russell E. Parsons, Beverly Hills, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., James K. Mitsumori, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

Appellant, C. N. Papadakis, stands convicted on 16 counts of willfully and knowingly attempting to defeat and evade income taxes by filing and causing to be filed false and fraudulent income tax returns, in violation of 26 U.S. C.A. § 145(b).

The first 8 counts charged appellant and his father, Nick Papadakis, as joint defendants, with attempting to defeat and evade income taxes due and owing by Nick and his wife, Katina, who reported their income on a community property basis. Counts 1, 3, 5 and 7 relate to income taxes due and owing by Nick for the taxable years 1945, 1947, 1948 and 1949, respectively. Counts 2, 4, 6 and 8 concern income taxes due and owing by Katina for the same years, and in the same order.

The counts numbered 9 through 16 charged appellant as sole defendant with willfully attempting to defeat and evade income taxes due and owing by himself and his wife, Helene, who reported their income on a community property basis. Counts 9, 11, 13 and 15 relate to income taxes due and owing by appellant for the taxable years 1946, 1947, 1948 and 1949, respectively. Counts 10, 12, 14 and 16 concern income taxes due and owing by Helene for the same years, and in the same order.

Appellant was sentenced to 10 months imprisonment on each of the 16 counts, the sentences to run concurrently, and to pay a fine of $200 on each of the counts —a total of $3200. Nick was convicted and sentenced on counts 1 through 8 but took no appeal.

Prior to the taxable years involved Nick Papadakis owned and operated the LaSalle Hotel and two liquor stores in San Pedro, California and owned a number of other properties on which he received rental income. In 1946 Nick turned over the business of the two liquor stores to appellant and his brother, George Papadakis, who thereafter operated the stores as a partnership under the firm name of Anchor Liquors. Prior to 1950 Anchor Liquors took on two additional partners and acquired two more liquor stores.

Nick and his wife received all of the income from the LaSalle Hotel and the rental properties until early in 1947 when Nick took his son, Ernest, in as his partner. Ernest left this partnership late in 1949 to join the firm of Anchor Liquors.

The income of Nick and his wife from all of the properties, including the two liquor stores, is in issue for the year 1945 under counts 1 and 2 of the indictment, and their incomes from the LaSalle Hotel and the rental properties for the years 1947 through 1949 are in issue under counts 3 through 8. The incomes of appellant and his wife from Anchor Liquors for the years 1946 through 1949 are in issue under counts 9 through 16.

Appellant challenges the sufficiency of the evidence on all counts and we turn first to that question, putting off for the moment questions raised as to the admissibility of certain evidence introduced by the government.

Sufficiency of the Evidence.

■ ■ In determining whether the evidence was sufficient to sustain the verdict we view the record in the light most favorable to the government and affirm if the evidence, so viewed, was sufficient to justify the jury in finding, beyond a reasonable doubt, that there has been a willful attempt to evade taxes. Gendelman v. United States, 9 Cir., 191 F.2d 993, 995, certiorari denied 342 U.S. 909, 72 S.Ct. 302, 96 L.Ed. 680; McFee v. United States, 9 Cir., 206 F. 2d 872, 874.

*Counts 1 through 8.* Appellant was charged in these counts on the theory that he knowingly and willfully assisted Nick in an attempt to defeat and evade income taxes due and owing by Nick and his wife.

In late 1945 appellant was given general supervision of his father's business affairs. For all of the taxable years in question he had charge of reporting the income of the family enterprises for tax purposes. Books were kept by several members of the Papadakis family showing receipts and expenses of the LaSalle Hotel and the rental properties. The manager of each of the liquor stores kept the books for that store. At the end of each year appellant collected from the person or persons who kept the books information as to the receipts, costs and expenses of the hotel and rental properties and of each of the liquor stores. From these figures appellant prepared consolidated work sheets and turned these sheets over to an accountant, who prepared the required partnership and individual returns.

Counts 1 and 2 concern the incomes of Nick and Katina for the year 1945. The books and records for the LaSalle Hotel and rental properties being admittedly incomplete, the government relied

solely upon the net worth-expenditures method to prove that Nick and Katina had unreported income in 1945. In other words, the government sought to show the net worth of Nick and Katina as of the beginning and the end of the year 1945 and the non-deductible expenditures and gifts made by them in that year. If the increase in their net worth plus their non-deductible expenditures and gifts exceeded their reported income, and this excess was not satisfactorily explained, the jury was entitled to find, as it evidently did find, that they received income in that year which they failed to report. McFee v. United States, supra.

The evidence was sufficient on counts 1 and 2. The government introduced evidence and computations based thereon which, if believed, established that Nick and Katina had a total unreported income of $20,822.94 in 1945. The only substantial dispute of fact was whether the income from the liquor stores in that year, amounting to $16,761.52, was income of Nick and Katina or of their two sons, appellant and George Papadakis. The theory of the defense was that while the profits of the two stores went into the bank account of Nick or were expended by him, those profits in fact belonged to appellant and George, as owners of the businesses; that Nick and Katina were therefore obligated to appellant and George for the amount of those profits; and that in failing to take this obligation into account the government overstated the unreported income of Nick and Katina in the amount of the income from the stores.

Admittedly Nick held fee title to the land and the store buildings, but several members of the Papadakis family testified that the business of one of the stores had belonged to George Papadakis since 1935 and that the business of the other had been the property of appellant since 1939. The off-sale liquor licenses for the stores were in the names of appellant and George, and they reported the income from the stores in 1945, as in prior years, as their own for income tax purposes. However, there was abundant evidence to sustain the conclusion that the businesses in fact belonged to Nick and his wife in 1945. The net worth statement introduced by the defense, on which appellant relies, lists the inventories of the stores as belonging to Nick and Katina as of December 31, 1944 and December 31, 1945, and it is admitted that appellant and George Papadakis were obliged to buy the inventories from Nick for a very substantial sum in 1946, when the firm of Anchor Liquors was formed. And there is room for doubt that Nick was ever in fact under an obligation to pay his sons the 1945 profits from the stores, for no payments were ever made by him and no time set for payment. Appellant testified vaguely that perhaps Nick would take care of the matter in his will.

From the fact that appellant and George reported the 1945 income from the stores on their own income tax returns it might have been found that appellant acted in good faith, and that there was no willful attempt to evade taxes on that income. But this was a question for the jury. There was evidence that in 1949 appellant told a Bureau agent that the business belonged to Nick in 1945. This cast doubt on appellant's good faith in failing to report the income from the stores as income of Nick and Katina. There was ample evidence, as will be seen, from which the jury could have decided that this was but a part of a deliberate, long-continued practice by appellant of attempting to defeat taxes on the income from the family enterprises, and that the reporting of the income of the stores by appellant and George was merely a ruse to avoid the higher surtax rates which would apply if the income was reported by Nick and Katina.

Moreover, even if the income of the stores is eliminated from the income of Nick and Katina, and if we allow for a seeming minor error in the government's computation, the government's proof still established that Nick and Ka-

tina had unreported income of nearly $3000 in 1945.

Counts 3 through 8 concern the incomes of Nick and Katina Papadakis from the LaSalle Hotel and the rental properties for the years 1947 through 1949. The government relied upon both the net worth-expenditures method and upon other evidence to prove evasion of the taxes of Nick and Katina for those years.

The government claims to have established, by the net worth-expenditures method, that Nick and Katina had unreported income of $42,949.12 in 1947, $42,395.02 in 1948, and $34,440.29 in 1949. However, a large part of the income attributed to Nick and Katina in the government's computation was in fact the income of Ernest Papadakis, who was Nick's partner in those years. The government concedes the existence of this partnership. The profits from the LaSalle Hotel and the rental properties all went into Nick's bank account or were expended by him for his own account. This was brought out by Martha O'Sullivan, testifying as a government witness on direct examination, and was never contradicted. One-half of the profits held or expended by Nick in the years 1947 though 1949 were taxable to Ernest, and the government did not consider this in its calculation of the unreported income of Nick and Katina for those years.

It was also brought out in the government's own evidence, and never disputed, that in the years 1947, 1948 and 1949 appellant and George Papadakis made payments to Nick on the purchase price of the inventory of the liquor stores. Those receipts were not taxable income, and the government's computation of unreported income is therefore excessive because of a failure to take them into account.

After allowing for these errors, Nick and Katina had unreported income, according to the net worth-expenditures proof of the government, of more than $10,000 in 1947, $15,000 in 1948 and $5,-000 in 1949. Appellant contends that there was an additional overstatement by the government of unreported income of $7,000 in 1949, but the basis for that contention has been nowhere satisfactorily explained.

There was other, overwhelming proof of appellant's guilt on counts 3 through 8. Some of this evidence was supplied by the defense itself. In attacking the government's net worth-expenditures computation appellant relies upon defense evidence that Ernest's share of the profits of the La Salle Hotel and the rental properties was more than $23,000 in 1947 and more than $27,000 in 1948. Admittedly the share of Nick and Katina was an equal amount in each of those years. Yet the partnership tax return stated Nick's share to be less than $11,-000 in 1947 and less than $14,000 in 1948, and this was of course reflected in the individual returns of Nick and Katina.

A Bureau agent testified that an audit of the rental receipt book kept for the rental properties revealed a great number of omissions. This book was the source of information for the income tax returns. In some instances receipts of rent were proved by the production of checks drawn by tenants, indorsed by Nick, and it was shown that those receipts were never entered in the book. Substantial omissions were admitted by several members of the Papadakis family. There were apparent omissions which were never explained. The undisputed and apparent omissions amounted to more than $8,000 in 1947 and 1948 and more than $7,000 in 1949. While appellant did not personally make the entries in this book, he had general supervision of the family enterprises, and the jury could well have concluded that he was fully aware of the omissions when he directed the preparation of the tax returns.

In his investigation the Bureau agent first totaled the rental receipts shown in the book on an adding machine. Later he made an audit of the book. Some of the apparent omissions had been filled in

between his first and second examinations of the book. This was admitted by Ernest Papadakis, a defense witness.

Leonard Mattis, an accountant who prepared the income tax returns for the Papadakis family for the years 1947 through 1951, testified that in March of 1948, in the course of preparing the partnership income tax return for the LaSalle Hotel and the rental properties, he found that approximately $22,000 had been spent in 1947 in remodeling the LaSalle Hotel. Mattis thought this should have been capitalized, but appellant told him to put it all down as deductible expense, and that if they were caught, he (appellant) would take care of it. When Mattis had prepared a tentative return, appellant told him it was still "too damn high." Under appellant's direction, Mattis raised expenses and cut gross receipts until the net income was reduced by $16,000 on the final return.

The following year Mattis prepared a tentative return for the partnership for the year 1948 from the work sheets given him by appellant. Appellant told him that the income shown on the tentative return would have to be cut. Accordingly, Mattis, at appellant's direction, reduced the gross receipts on the final return by $10,000. Moreover, when appellant found that there would be an overall tax saving by omitting the rental paid Nick by Anchor Liquors from the rental receipts, and also omitting it from the expenses of Anchor Liquors, this was the course followed, with the view that Anchor Liquors would be reimbursed by appellant's father in the amount of the tax saving to the latter.

The evidence was clearly sufficient on counts 3 through 8.

*Counts 9 through 16.* These counts charged appellant with attempting to evade taxes of himself and his wife on the income from Anchor Liquors for the years 1946 through 1949. Appellant was in charge of preparing the tax returns for the firm. He signed the partnership returns and also the individual returns of his wife.

The government did not use the net worth-expenditures method of proof on these counts. They relied instead upon the partnership books. These books revealed that there had been substantial overstatements of purchases on the partnership returns for each of the years 1947, 1948 and 1949, and in addition that gross receipts had been understated and expenses overstated for the year 1949. The resulting understatements of net income in the partnership returns were reflected in the individual returns of appellant and his wife. This evidence was corroborated by Mattis, appellant's accountant. He testified that, at appellant's direction, he cut net income on the partnership returns in the years 1947 through 1949, and that work papers made available to him indicated a similar practice in the preparation of the return for 1946.

At Mattis' first meeting with appellant in March of 1948, Paul Hoffman, the prior acountant for the Papadakis family, was present. According to Mattis, Hoffman told him that "they had been cutting the gross and changing the inventory from year to year." When Mattis asked whether that was risky, Hoffman said that "they had been getting away with it for years."

There was evidence that shortly after the Bureau investigation of Anchor Liquors was commenced, appellant offered a Bureau agent a bribe first of $1,000 and then of $1,500 to "wind up this case —set up some deficiency and get out."

The evidence was sufficient on counts 9 through 16.

### Admissibility of Evidence.

Appellant contends that Government Exhibits 34, 74, 75, 77, 77–A and 77–B were hearsay as against appellant.

■ Exhibit 34 is a statement showing the net worth of Nick and Katina Papadakis as of the beginning and end of each of the taxable years involved. It was prepared by Martha O'Sullivan, an accountant for Nick. Whether it was hearsay as against appellant we need not

decide, for it was admitted without objection by appellant. Moreover, it was almost an exact copy of Defense Exhibit N–D, on which appellant here relies. Appellant can hardly contend, therefore, that he was prejudiced by Exhibit 34.

Exhibit 74 is a summary of the deposits made in and checks drawn on the bank accounts of Anchor Liquors and Nick Papadakis. It was introduced to show that the amounts of cash which flowed through these accounts were abnormally large when compared with the reported incomes of the depositors. It was based upon records kept in the ordinary course of business by the bank. These records were identified by an official of the bank and properly admitted in evidence under the Business Records exception to the hearsay rule. 28 U.S.C.A. § 1732. Exhibit 74 was admissible as a summary or tabulation of the results of an examination of these records. Augustine v. Bowles, 9 Cir., 149 F.2d 93; Hanson v. United States, 8 Cir., 186 F.2d 61; United States v. Kelley, 2 Cir., 105 F.2d 912.

Exhibit 75 was a net worth statement of Nick and Katina Papadakis signed by Nick. It was hearsay as against appellant, but the error in admitting it as against him was clearly harmless. Exhibit 75 was substantially the same as Government Exhibit 89, as to which appellant makes no complaint. Even Defense Exhibit N–D, on which appellant relies, varies from Exhibit 75 in only a few particulars. Defense Exhibit N–D corrects errors in Government Exhibits 75 and 89—errors which we have noted above—and these corrections constituted the only substantial differences between the government and the defense on the net worth-expenditures evidence. Appellant was not prejudiced by the admission of this exhibit.

Exhibits 77, 77–A and 77–B were summaries of omissions from the book showing receipts from the rental properties. Photostatic copies of the pages of the rental receipt book and, later, the original book itself were received in evidence. The book was admissible as against appellant under the business records exception to the hearsay rule. 28 U.S.C.A. § 1732. Exhibits 77, 77–A and 77–B were admissible as summaries or tabulations of the results of an examination of the book. Augustine v. Bowles, supra; Hanson v. United States, supra; United States v. Kelley, supra.

Appellant presents a blanket objection to all of these documents. All of them, says appellant, summarized accumulations of properties by Nick and Katina or transactions in which appellant had no part and therefore they were hearsay as against him. In other words, appellant asserts that the facts should not have been shown as against him since he had nothing to do with those facts. But that is no valid objection under the hearsay rule. That rule is not concerned with what facts may or may not be the subjects of evidence. Other rules, such as the rules of relevancy, deal with that question. The hearsay rule is concerned only with the *reliability of evidence* offered to prove a fact, whatever that fact might be. It operates to render inadmissible extra-judicial writings or declarations introduced to prove the truth of what was said or written, on the theory that such evidence, not being subject to the tests of cross-examination, is not reliable. 5 Wigmore on Evidence, § 1361. That appellant had no part in the transactions summarized in the exhibits complained of may raise a question of relevancy, but it is a matter of indifference so far as the hearsay rule is concerned.

If appellant means to say that the documents were irrelevant as against him, the contention is clearly without merit. The documents tended to show that Nick and Katina Papadakis had income which they failed to report, and therefore that there was an attempt to defeat their income taxes—an attempt in which appellant had a very active, if not the principal part.

The court below also admitted evidence of certain oral statements made out of court by Nick Papadakis. The

declarations were properly received as against Nick as admissions of a defendant, but they were hearsay as to appellant. Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481. The court below instructed the jury at the close of the trial to consider out-of-court statements by either of the defendants only as against the defendant who made them, but this was not sufficient. The court should have directed that the declarations were received only as against Nick Papadakis at the time they were admitted. Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481. In this connection, three oral conversations of Nick with Bureau agents are complained of. They were as follows: (1) Bureau agents examined the journal showing receipts from the rental properties. They discovered apparent omissions and asked Nick Papadakis why the rentals had not been shown. Nick replied that he did not know. (2) Nick stated to Bureau agents that the entries in the rental receipts book had been made by himself, his son and his daughter. (3) Bureau agents discovered in their second examination of the rental receipt book that apparent omissions had been filled in since their first examination of the book. Nick was asked why these additions had been made, why the book had never been totaled, and whether the book was the original book kept for the rental properties. Nick replied that he couldn't understand the talk as to the filling in of omissions, that the book must have been totaled at some time, and that the book was the original book.

Appellant contends that this evidence was "highly inflammatory" but he gives no reason why it should be so considered and we perceive none. The only declaration of Nick which could conceivably have prejudiced appellant was the statement that he did not know why there were omissions from the book. But evidence of the same omissions was introduced at the trial and never rebutted or explained by the defense. The errors in failing to limit the effect of these declarations, whether considered singly or cumulatively, were wholly innocuous. This is a clear case for application of Rule 52(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[1]

### The Court's Instructions.

Questions raised as to the lower court's instructions to the jury make it necessary to consider the role of appellant's former accountant, Leonard Mattis, in the transactions and investigations which gave rise to the indictment in this case. Mattis was employed at some time prior to March of 1948 by Paul Hoffman, who for years had prepared income tax returns for members of the Papadakis family. At a meeting between Mattis, Hoffman and appellant in March of 1948, ways and means of cutting income taxes were discussed. Mattis testified that he thereafter took part in preparing fraudulent income tax returns for the Papadakis family for the taxable year 1947 under the direction of appellant. In September or October of 1948, either because he had fears concerning his part in the preparation of the returns, or because he thought he might obtain, as an informer, a part of the government's recovery of deficiencies as against members of the Papadakis family, Mattis wrote a letter to the Internal Revenue Bureau stating what had transpired. In the summer of 1949, after the Bureau had begun an investigation of the Papadakis family enterprises, Mattis was called to the San Pedro Office of the Bureau of Internal Revenue to meet with an investigator. Later he turned over a number of his work papers on Papadakis income tax matters to Bureau agents. Mattis continued to prepare income tax returns for the Papadakis family through March of 1952, and during that period was in touch with Bureau agents.

Appellant contends, first, that the court below erred in refusing to give instructions on the defense of entrap-

---

1. "Rule 52. Harmless Error and Plain Error

"(a) Harmless Error. Any error, de-

fect, irregularity or variance which does not affect substantial rights shall be disregarded."

ment. We think not. The defense of entrapment is available only where there has been an "instigation by *government officials* of an act on the part of persons otherwise innocent in order to lure them to its commission and punish them." (Emphasis ours). Sorrells v. United States, 287 U.S. 435, 448, 53 S.Ct. 210, 215, 77 L.Ed. 413. The defense is recognized, not because a person induced by another is any the less guilty of the crime committed, but because it is deemed unconscionable to permit the government to prosecute an accused for an offense instigated by its own agents. "The defense is available, not in the view that the accused though guilty may go free, but that the government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct." Sorrells v. United States, supra, 287 U.S. at page 452, 53 S.Ct. at page 216.

▉▉▉▉ Here there is not a shred of evidence that Mattis was ever an agent of the government. His testimony certainly did not so indicate, and the defense did not see fit to explore the matter on cross-examination. The evidence is that he prepared the income tax returns of the Papadakis family for the years 1947 through 1951 for a reasonable fee, and that he contacted government officials in the summer of 1948 either out of fear or in hope of a profit. Neither is there any evidence that Mattis instigated the fraudulent preparation of tax returns, or that he implanted the criminal design in the mind of appellant. Mattis did not appear on the scene until March of 1948, two years after the commission of the crimes charged in Counts 1 and 2 of the indictment and a year after the crimes charged in counts 9 and 10. Mattis testified that it was only under appellant's instructions that he thereafter prepared fraudulent returns. Appellant denied giving such instructions, but he did not testify that Mattis at any time suggested the falsification of returns. There is simply no evidence of entrapment, and the court below correctly refused an instruction on that subject.

▉▉▉▉ Appellant also contends, rather anomalously, in view of his position on the entrapment issue, that Mattis was an accomplice, and that the court below erred in failing to instruct the jury that the testimony of an accomplice is to be viewed with extreme caution. Whether Mattis was an accomplice we need not decide, for it does not appear that appellant requested an instruction on that score. But assuming that Mattis was an accomplice, and assuming further that the instruction had been requested, a refusal to give it, though not the better practice, would not have been reversible error. Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442, affirming 9 Cir., 220 F. 545; United States v. Wilson, 2 Cir., 154 F.2d 802, 805, certiorari denied 328 U.S. 823, 66 S.Ct. 1363, 90 L.Ed. 1603, rehearing denied 329 U.S. 819, 67 S.Ct. 28, 91 L.Ed. 697; Cf. Kearns v. United States, 9 Cir., 27 F.2d 854, certiorari denied 278 U.S. 652, 49 S.Ct. 178, 73 L.Ed. 563; Stillman v. United States, 9 Cir., 177 F.2d 607.

Appellant urges that the court erred in refusing to instruct the jury to consider the "motives and statements" of prosecution witnesses who were officers of the government, but that subject was adequately covered in another instruction.

▉▉▉▉ It is next contended that the court erred in instructing the jury that in judging the testimony of the defendants they were to consider the interest of the defendants in the case, "their hopes and fears, and what they have to gain or lose as a result of your verdict." This instruction was proper. Fredrick v. United States, 9 Cir., 163 F.2d 536, 550, certiorari denied 332 U.S. 775, 68 S.Ct. 87, 92 L.Ed. 360; Marino v. United States, 9 Cir., 91 F.2d 691, 113 A.L.R. 975, certiorari denied, Gullo v. United States, 302 U.S. 764, 58 S.Ct. 410, 82 L.Ed. 593; Schulze v. United States, 9 Cir., 259 F. 189.

▉▉▉▉ Appellant requested an instruction that the defendant was entitled to the individual and independent verdict of each and every member of the

jury, and that unless the evidence established guilt of the crime charged, beyond a reasonable doubt, in the mind of each and every juror, then such juror should vote to acquit the defendant. The court refused this instruction, and charged the jury that "Jurors are expected to agree upon a verdict where they can conscientiously do so, you are expected to consult with one another in the jury room and any juror should not hesitate to abandon his own view when convinced it is erroneous." The instruction requested was properly refused; the instruction given was substantially correct. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528; Zamloch v. United States, 9 Cir., 193 F.2d 889, certiorari denied 343 U.S. 934, 72 S.Ct. 770, 96 L.Ed. 1342; Egan v. United States, 55 App.D.C. 306, 5 F.2d 267; Lias v. United States, 4 Cir., 51 F.2d 215, affirmed 284 U.S. 584, 52 S.Ct. 128, 76 L.Ed. 505; Bowen v. United States, 8 Cir., 153 F.2d 747, certiorari denied 328 U.S. 835, 66 S.Ct. 980, 90 L.Ed. 1611; United States v. Furlong, 7 Cir., 194 F.2d 1, certiorari denied 343 U.S. 950, 72 S.Ct. 1042, 96 L.Ed. 1352.

The judgment is affirmed on all counts.