Forrest Etheridge **HONEA**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 19339.

United States Court of Appeals
Fifth Circuit.

April 28, 1965.

Rehearing Denied July 21, 1965.

William O. Braecklein, Dallas, Tex., for appellant.

Robert B. Ward, Asst. U. S. Atty., Dallas, Tex., for appellee.

Before BROWN and BELL, Circuit Judges, and SIMPSON, District Judge.

JOHN R. BROWN, Circuit Judge:

 In this appeal by Honea from his conviction and sentence of three years plus a fine of $1,000 under an indictment charging a violation of 18 U.S.C.A. § 912,[1] we reach only one issue—the sufficiency of the indictment to charge the offense. Answering in the negative, the case must be reversed and we need go no further.

The indictment was worded:

"* * * on or about March 15, 1961, * * * Forrest Etheridge Honea, hereinafter called defendant, which said defendant was not then and there an officer or employee acting under authority of the United States of America, did unlawfully, knowingly, and feloniously, falsely assume to be an employee under the authority of the United States of America, to wit, an employee of the Central Intelligence Agency, an agency of the United States of America, and in such pretended character, and with full knowledge that the same was false, the said defendant did obtain money, to wit, the sum of $4,000 in cash, from Nellie Oriene May Dunn."[2]

By a timely pretrial motion to dismiss, F.R.Crim.P. 12(b)(2), Honea urged that the indictment was "fatally defective" because it failed "to allege that the defendant did the acts with intent to defraud either the United States or any person." The motion was denied.[3]

At the trial, the evidence revealed that over a period of about two months, Honea, an adventurous rogue, had, under an assumed name and identity first as a retired Colonel which was later embellished by his claim of being a CIA agent, courted and married a young widow, Mrs. Dunn, who among her other attractions had $4,000 from the sale of the equity in her home and $20,000 from her recently deceased husband's life insurance. Being given to sudden and unexplained sorties about the country which seemed to upset Mrs. Dunn and her married couple friends who took quite an interest in this

1. "Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and [1] acts as such, or [2] in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both." Brackets ([1] and [2]) are inserted to facilitate classification and discussion of the two separate kinds of offenses under § 912.

2. The indictment obviously was intended to—and certainly does no more than—charge Honea with committing offense [2] under § 912. See note 1, supra.

3. Nevertheless, the Judge charged the jury, as requested by Honea's counsel, that intent to defraud was a necessary element of the offense.

whirlwind courtship, Honea, when confronted with his apparent inattentiveness toward his intended, made up the bit about being a CIA agent. The yarn had nothing to do with money. Then came the marriage—a result in which a CIA's status was not a catalyst. After the marriage she voluntarily let him have $4,000 on the occasion specified in the indictment and cosigned his note for $10,000 on another (not alleged)—in each instance the money being advanced to assist Honea in some purported CIA venture. During this same period of time Honea splendidly provisioned Mrs. Dunn, housing her in fine hotels, and lavishly wining, dining, and gifting her—including a new Pontiac. At Honea's arrest, he returned to her a substantial portion of the money taken from her.

The question before the Court really has two parts: (a) is intent to defraud an essential element for an offense under the part [2] of § 912, and (b) if so, is this indictment fatally defective for failure to include such an allegation.

■ Our attention is immediately directed to the fact that in its present recodified form § 912 does not in express words require an intent to defraud, and that words to that effect were deleted from the former version of the statute [4] in the 1948 Revision of the Criminal Code. Thus the answer to (a) depends on a painstaking examination of the available resources to determine the intent of the Revisers and, by imputation, Congress, in eliminating this language.

■ We know as a general matter that, with few exceptions, the 1948 revision was not intended to effect substantive changes in federal criminal law.[5]

■ With particular reference to § 912, note 1, supra, the Revisor's Note shows that former § 123 was merged into it, thereby eliminating the separate offense and different punishment for false impersonation of a revenue officer. As appears from a comparison of former § 76 with § 912 (see notes 4 and 1, supra), much unneeded verbiage was commendably excised from the statute. And then the Revisers make the key and cryptic statement that "The words 'with the intent to defraud the United States or any

---

4. Act of March 4, 1909, c. 321, § 32, 35 Stat. 1095, as amended, Act of February 28, 1938, c. 37, 52 Stat. 83, formerly codified as 18 U.S.C.A. § 76 (1940).

"Whoever, *with intent to defraud either the United States or any person, shall* falsely assume or pretend to be an officer or employee acting under the authority of the United States, or any department, *or any officer of the Government thereof, or under the authority of any corporation owned or controlled by the United States,* and [1] *shall take upon himself to* act as such, or [2] *shall* in such pretended character demand or obtain *from any person or from the United States, or any department, or any officer of the Government thereof, or any corporation owned or controlled by the United States,* any money, paper, document, *or other valuable thing,* shall be fined not more than $1,000 or imprisoned not more than three years, or both."

We have italicized the portions which were either deleted or modified in § 912, and have inserted brackets ([1] and [2]) to identify the separate offenses. See note 1, supra.

5. Judge Holtzoff, who assisted in the revision, offers this explanation in the Preface to Title 18 U.S.C.A., Vol. 1, p. v, vi:

"In general, with few exceptions, the Code does not attempt to change existing law. Every provision has been brought down to date. The law has been rearranged and greatly simplified and modernized in phraseology. In addition many provisions were combined and much overlapping was eliminated. Criminal provisions previously contained in many other statutes were transferred into the Criminal Code insofar as possible. * * *

"While in general the new Title 18 constitutes a restatement of preexisting law, many changes have been made in the punishments prescribed for various crimes. In some instances the maximum penalties were increased, in others they were reduced. The purpose was to arrive at uniform maximum penalties insofar as possible for similar crimes. * * *" See also H.Rep.304, 80th Cong., 1st Sess., 1–9. It should be noted that almost every one of Judge Holtzoff's general observations is applicable to § 912. See Reviser's Note, § 912.

person', contained in section 76 of Title 18, U.S.C., 1940 ed., were omitted as meaningless in view of United States v. Lapowich [Lepowitch] [1943, 318 U.S. 702], 63 S.Ct. 914, [87 L.Ed. 1091]." The citation is obviously to Lepowitch and apparently refers to the following statement in that opinion:

> "We hold that the words 'intent to defraud' in the context of this statute, do not require more than the defendants have, by artifice and deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct." [6]

While we may have some doubt that this really renders the fraudulent intent requirement "meaningless," as the Revisers expressed it, their reaction to that effect is an understandable one.

■ Perhaps of greater concern is what kind of legislative response to Lepowitch, if any, was intended by the deletion of the words "intent to defraud". In view of the general purpose of the revision and the absence of a more definitive statement as to this particular section, the most unlikely meaning to assign is that the Revisers intended to overrule Lepowitch by re-legislation or to modify the substance of the provision. The Revisers' rather terse explanation suggests that their intent was—as is frequently done in codification-revision efforts of this kind—to make the statutory wording conform to authoritative judicial construction, and to carry forward, by a simplified and streamlined wording of the statute, the Lepowitch statement of what facts would make out a violation of the offense involved in that case.

With this construction, it is important to analyze carefully the Lepowitch case. As we have previously noted, § 912 as well as its predecessor contains two separate offenses (as bracketed in note 1, supra), [1] false impersonation and acting as such, and [2] false impersonation and demanding or obtaining property. Our case is under [2], Lepowitch under

■ as the Supreme Court so carefully pointed out. In Lepowitch the defendants were charged with impersonating FBI officers and with an attempt to elicit information from an individual in such capacity. The trial court sustained a demurrer to the indictment, raising the legal question whether the facts asserted came within the statute, an issue of statutory construction. Although the indictment contained a second count based on part [2] of § 76—obtaining a valuable thing—the Government did not ask for review of this aspect of the trial Judge's ruling. 318 U.S. at 703, n. 2, 63 S.Ct. 914.

■■ Since it is the classic posture of courts to hear argument and having heard to answer responsively, we are assisted by noting from the Lawyer's Edition summary of argument the way the Lepowitch appeal was put to the Supreme Court by the lawyers. The defendants' position was that intent to defraud meant intent to deprive another of money or property (a "valuable thing")—thus lumping together parts [1] and [2] of the statute. It followed from this that there could be no conviction for obtaining, by deceitful false impersonation, information or papers having no value to the giver. This construction would have effectively knocked out one of the vital interests which the statute seeks to protect, namely, the dignity, prestige and importance of federal office. See United States v. Barnow, 1915, 239 U.S. 74, 78, 36 S.Ct. 19, 60 L.Ed. 155. Thus it was important for the Government to distinguish the two offenses, and to make it clear that the first kind of offense—[1] acting as a federal officer—could be committed without an intent to wrongfully deprive another of his property.

In reversing the District Court, the Supreme Court agreed with the Government and made it clear that its definitional statement that intent to defraud means intent to change the course of conduct was applicable only to the type [1] offense.

---

6. 318 U.S. at 704, 63 S.Ct. at 916.

"The first [1] clause of this statute, the only one under consideration here, defines one offense; the second [2] clause defines another. While *more* than mere deceitful attempt to affect the course of action of another is required under the second [2] clause of the statute, which speaks of an intent to obtain a 'valuable thing', the very absence of these words of limitation in the first [1] portion of the act persuade us that under it, a person may be defrauded although he parts with something of no measurable value at all [such as information]." 318 U.S. at 704–705, 63 S.Ct. at 916. (Emphasis supplied.)

Viewed in this light, it is obvious that the Supreme Court was not concerned with the quality or intensity of the evil which characterized the false impersonator's intent, but rather with the object upon which that intent was focused, i. e., whether the intent had to be to obtain a thing of value, or whether an intent to change the course of someone's conduct would do. Thus the Supreme Court put no gloss on the fraudulent intent requirement where the prosecution is against one who [2] "demands or obtains" the property of another.

In § 76 the introductory words "intent to defraud" applied to both offenses [1] and [2] (see note 4, supra). In the quest for simplification, the Revisers apparently felt that the statute could be restructured by omitting the words which, indeed, were "meaningless" where the test for [1] "acts as such" would be acting with intent to change the course of another's conduct. This left the offense [2] subject to Court interpretation as to the precise nature of the intent required. And as to that, what the Supreme Court hinted, and what was clearly required in the statute at that time, we now hold. An intent to defraud or an intent to wrongfully deprive another of property is an essential element for a prosecution under the part [2] of § 912.

To hold otherwise would be to attribute to Congress an intent to greatly expand the scope of the statute so as to include and subject to serious penalty (3 years and/or $1,000) a broad range of possible conduct which, while blameworthy, would not ordinarily be regarded as having the major governmental significance of actions violating part [1]. For example, an ex-Marine, FBI man, PX clerk, Revenue Officer, or law clerk desires to cash a check for which there are funds in the bank, but not being known to the cashier, he flashes his expired Government ID card. Literally, he has "falsely assum[ed]" to be a federal "officer or employee", and "in such pretended character" has "obtain[ed] * * * money * * *." Certainly Congress could conclude that this should be a federal crime. But we do not believe that Congress in its preoccupation with offense [1] intended purposefully to eliminate the fraudulent intent element as to offense [2] and thereby wreak a change of major significance, both in the moral qualities of the substantive offense and in the punishment. The law frequently has read into a statute this very requirement of fraudulent intent. See Walker v. United States, 5 Cir., 1965, 342 F.2d 22 [Feb. 25, 1965]; White v. Levine, 10 Cir., 1930, 40 F.2d 502, 503. How much more is it justified when it was once formally a part of the statute and its omission occurred in a structural recodification.

As to whether the absence of an allegation that Honea did the acts in question with intent to defraud makes this indictment insufficient, our problem is much easier. This Court has recently stated in Walker v. United States, supra:

"It is elementary that an indictment must set forth the elements of the offense to be charged, and if it does not a conviction based thereon cannot stand." 342 F.2d at 26.

See also Russell v. United States, 1962, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240; 4 Barron, Federal Practice and Procedure § 1913 and 1964 Supp. §

1913 (Wright ed.). "An indictment or information in the language of the statute [as here] ordinarily is sufficient, except where the words of the statute do not contain all of the essential elements of the offense; but if the statute omits an essential element, the indictment must supply it with certainty." Babb v. United States, 5 Cir., 218 F.2d 538, 539. One of the laudable reforms of the Federal Rules of Criminal Procedure was to eliminate the necessity for much of the cumbersome claptrap which typically encased the common law indictment. See F.R.Cr. P. 7. Yet "the substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules." Smith v. United States, 1959, 360 U.S. 1, 9, 79 S. Ct. 991, 997, 3 L.Ed.2d 1041. It is often said that an indictment must (a) apprise the defendant of what he will have to meet and (b) protect him from double jeopardy. This indictment is sufficient as to (b), but, as in Russell, insufficient as to (a).

■ This has unusual importance in this case because the evidence on Honea's fraudulent intent—certainly with regard to the specified instance where he obtained $4,000 from his wife—if viewed apart from the subsequent uncharged incident,[7] would not have been enough to sustain the conviction. By his jury instructions (see note 3, supra), the trial Judge obviously realized the necessity of this element under the statute. Of course, this did not cure the defect. We could not say with any assurance that the Grand Jury would have returned a true bill had this vital element been brought home to them.

■ And finally we note that the Supreme Court approved form for an indictment under § 912, Form 9, F.R.Cr.P. Appendix of Forms, contains an "intent to defraud" allegation. While not determinative, this indication of what good

criminal pleading requires is strong evidence of what the criminal law requires.

Consequently, the indictment is fatally defective, the conviction thereunder must be set aside, and the indictment must be dismissed.

Reversed.

---

7. Counsel for Honea challenged the admissibility of testimony relating to the instance where Honea obtained the $10,-000 both by a pretrial motion to restrict

Government evidence and by excepting to the trial Court's charge to the jury that proof of a greater or lesser sum than that alleged in the indictment was irrelevant.