**UNITED STATES of America, Appellee,**

v.

**Cecil Grafton ROSE, Defendant-Appellant.**

**No. 1010, Docket 73-2760.**

United States Court of Appeals, Second Circuit.

Argued April 26, 1974.

Decided July 10, 1974.

Michael B. Mukasey, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the S. D.N.Y., and S. Andrew Schaffer, Asst. U. S. Atty., on the brief), for appellee.

E. Thomas Boyle, St. James, N. Y. (William J. Gallagher, The Legal Aid Society, Fed. Defender Service Unit, New York City, on the brief), for defendant-appellant.

Before LUMBARD and HAYS, Circuit Judges, and JAMESON, District Judge.\*

LUMBARD, Circuit Judge:

Cecil Grafton Rose appeals from a judgment of conviction entered after a three-day trial before Judge Brieant and a jury in the Southern District of New York. An indictment filed July 13, 1973 charged Rose in three counts with impersonating a federal officer and in such pretended character obtaining money and other things of value in violation of 18 U.S.C. § 912. Following dismissal of the first count because of a material variance between the government's proof and its bill of particulars, the jury on October 25, 1973 found Rose guilty as charged on counts two and three. On November 30, Judge Brieant sentenced Rose to concurrent prison terms of one year and a day on each count.

On appeal Rose claims that his convictions must be reversed because the indictment did not allege an essential element of the crime and because the prosecutor on cross-examination of Rose asked several questions that constituted improper comment upon his Fifth Amendment right to remain silent following arrest. We affirm.

I.

The government's evidence showed that on September 22, 1972 Harold Hines, a Brooklyn building superintendent and a Costa Rican immigrant, went to the office of the Immigration and Naturalization Service (INS) at 20 West Broadway in Manhattan to obtain a visa extension for his cousin, Evalina Adassa Craig. At the time he was carrying Craig's Costa Rican passport. Immigration authorities told him to mail the passport together with a ten-dollar extension fee. As Hines was leaving the building he was approached by Rose, who told him that the INS was going to deport him for failing to obtain an extension visa. Hines said that it was his cousin's visa, not his, that was in difficulty. Rose showed Hines a badge and said that he was a secret detective with the INS and could help Hines. He said that he knew a lawyer in New Jersey who could get the extension visa. Rose said that it would cost $500 and arranged to visit Hines' home that night to obtain part of the money. Hines gave Rose, who used the name Slim Johnson, his cousin's passport.

At the meeting Hines gave Rose $250. Rose called the next day and Hines agreed to meet him on September 25 near the INS office and give him $210. On September 25 Hines withdrew the money from the bank and gave it to Rose. On September 29 Rose called again and asked for $50 more. A meeting was arranged for that afternoon. Apparently suspicious at this point, Hines called a friend and then the INS. Rose kept the appointment and was ar-

\* Senior District Judge of the District of Montana, sitting by designation.

rested by INS officers. A search incident to arrest revealed a badge and Craig's passport.

Rose took the stand on his own behalf. He claimed that he had met Hines in the course of looking for an apartment. When Hines told him about this cousin's difficulty in getting a visa extension, he had offered to help Hines get the visa extension in return for Hines' offering him the first vacant apartment in Hines' building. At a meeting that night Mrs. Hines gave him Craig's passport. After cancelling one appointment, he agreed to meet Hines on September 29 in front of the INS office. He said that he was shocked when he was arrested, that he told the officers he would not try to flee and that he asked what was wrong. He testified that he found the badge at a subway stop and had kept it for the purpose of scaring children who caused trouble in the record store where he worked. He denied ever flashing it at Hines or claiming to be a federal officer.

On cross-examination Rose said that Hines might have seen the badge when he took out some used airline tickets to identify himself. Rose was questioned about the statements he made at the time of arrest including his protestations of surprise. Rose had offered no explanation of why he was meeting Hines in front of the INS office. The relevant portions of the examination of Rose have been reproduced in the margin.[1]

## II.

■ It was enough that the indictment charged Rose with falsely assuming and pretending to be a detective of the Immigration and Naturalization Service, an officer and employee acting under authority of the United States, and that in such character he demanded and obtained money. It was not necessary to charge that the crime was committed with intent to defraud.

The indictment here charged:

On or about the dates indicated in Counts 1 through 3 hereof, in the Southern District of New York, Cecil Grafton Rose, the defendant, unlawfully, wilfully and knowingly did falsely assume and pretend to be an officer and employee acting under the authority of the United States and a department, agency and officer thereof, to wit, a detective of the United States Immigration and Naturalization Service, and in such pretended character demanded and obtained money, papers, documents and things of value in the approximate amounts indicated in Counts 1 through 3 hereof:

| Count | Date | Amount Obtained |
|---|---|---|
| 1 | September 22, 1972 | $250.00 |
| 2 | September 25, 1972 | 210.00 |
| 3 | September 29, 1972 | — |

The language of the indictment tracks the language of part [2] of 18 U.S.C. §

1. The trial transcript (pp. 145–46) reads:

Q. When you got upstairs and they [the arresting officers] took the material [seized from Rose's person] out, did you explain what you just told us to the arresting officer?
A. What is wrong?
Q. Did you explain to them how you came to have the passport?
A. Passport?
Q. Yes.
A. I didn't make no statement to the officers.
Q. Did you explain to them why you had met Mr. Hines that day?
A. Why I had met Mr. Hines?
Q. Yes.
A. I didn't have to tell them why I had met Mr. Hines.

Q. Nobody said you had to. I'm asking you whether you did.
A. No, sir.
Q. You didn't offer them the explanation that you offered the jury on direct examination?
A. What explanation?
Q. The explanation that you met Mr. Hines when you were looking for an apartment and essentially that you were going to do that to help you find an apartment.
A. No, I didn't have to do it.
Q. You did not tell them that?
A. No.
Q. Why did you not?
A. Because there was no reason for it. I didn't know I was under arrest.

912, which deals with two distinct offenses:[2]

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, [1] and acts as such, [2] or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both.

The predecessor of § 912, 18 U.S.C. § 76 (1940), codifying Act of March 4, 1909, ch. 321, § 32, 35 Stat. 1100, as amended by Act of Feb. 28, 1938, ch. 37, 52 Stat. 83, required an additional element in the crime, that there be "intent to defraud the United States or any person."[3] Rose claims that, even though this language was dropped from the statute when it was revised in 1948, intent to defraud is still an essential element of the crime and must be alleged in the indictment.

The Fifth Circuit supports Rose's position, United States v. Randolph, 460 F.2d 367 (5th Cir. 1972) (case involving part [1] offense); Honea v. United States, 344 F.2d 798 (5th Cir. 1965) (case involving part [2] offense), while the Fourth and Ninth Circuits support the contrary position, United States v. Guthrie, 387 F.2d 569 (4th Cir. 1967), cert. denied, 392 U.S. 927, 88 S.Ct. 2284, 20 L.Ed.2d 1386 (1968) (case involving part [1] offense); United States v. Mitman, 459 F.2d 451 (9th Cir.), cert. denied, 409 U.S. 863, 93 S.Ct. 154, 34 L. Ed.2d 111 (1972) (case involving part

[2] offense). See also United States v. Harth, 280 F.Supp. 425, 426 n. 4 (W.D. Okl.1968); United States v. Carr, 194 F.Supp. 144, 145 n. 1 (N.D.Cal.1961); United States v. Meeker, 110 F.Supp. 743, 14 Alaska 249 (D.Alaska 1953).

The requirement that there be an "intent to defraud" was dropped in the 1948 revision of the Criminal Code. The only explanation for the deletion came in the Reviser's Note: "The words 'with the intent to defraud the United States or any person' contained in said section 76 of title 18, U.S.C., 1940 ed., were omitted as meaningless in view of United States v. Lapowich, [Lepowitch, 318 U.S. 702 (1943)], 63 S.Ct. 914 [87 L.Ed. 1727]." In *Lepowitch*, the Supreme Court was concerned with an indictment that charged defendants with impersonating FBI agents in violation of part [1] of the former 18 U.S.C. § 76. Defendants argued that the "intent to defraud" requirement, which applied to both parts [1] and [2], meant that for them to be guilty they would have to have intended to deprive someone of something valuable. Since part [2] already provided as a separate offense demanding or obtaining things of value in a pretended capacity, this interpretation would have rendered part [1] meaningless. The Court stated: "We hold the words 'intent to defraud,' in the context of this statute, do not require more than the defendants have, by artifice and deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct." 318 U.S. at 704, 63 S.Ct. at 916 (footnote omitted).

---

**2.** As have other courts, we insert [1] and [2] into § 912 to emphasize the two distinct offenses.

**3.** In full, 18 U.S.C. § 76 (1940) provides (with [1] and [2] again inserted):

> Whoever, with intent to defraud either the United States or any person, shall falsely assume or pretend to be an officer or employee acting under the authority of the United States, or any department, or any officer of the Government thereof, or under the authority of any corporation owned or controlled by the United States, and [1] shall take upon himself to act as such, or [2] shall in such pretended character demand or obtain from any person or from the United States, or any department, or any officer of the Government thereof, or any corporation owned or controlled by the United States, any money, paper, document, or other valuable thing, shall be fined not more than $1,000 or imprisoned not more than three years, or both.

Initially, Rose argues that our decision in United States v. Wight, 176 F.2d 376 (2d Cir. 1949), cert. denied, 338 U. S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950), indicates agreement with the Fifth Circuit position. We do not agree. It is true that in that case we said, "The statute plainly prohibits any false assumption or pretense of office or employment under the authority of the United States in any department or office in the government when done with intent to defraud and accompanied by any of the specified acts in the pretended character." 176 F.2d at 379. But it seems likely that the offenses in that case arose under the old § 76 rather than § 912, for the court cited both provisions. In any event, we were not concerned with how the 1948 revision had changed the elements of the offense and did not determine the issue before us. Indeed, only recently we declined to rule on this very point in deciding United States v. Harmon, 496 F. 2d 20 (2d Cir. 1974), at 21.[4]

The leading case supporting Rose's argument is Honea v. United States, *supra*. There the defendant was charged with gaining money from his bride on the pretext that he was a CIA agent and needed the money for a CIA venture, when, of course, he had no connection with the Central Intelligence Agency. The Fifth Circuit quoted the definition of intent to defraud from *Lepowitch*, which we have quoted above. The court, however, read *Lepowitch* to limit this definition only to a part [1] offense. Arguing that to hold otherwise would greatly expand the scope of § 912, the court concluded that intent to defraud was still an essential element of a part [2] offense.

With all due respect, we believe that the court in *Honea* erred. If by intent to defraud the court meant that the defendant to violate part [2] of § 912 must demand or receive something of greater value than what he gives in return, its holding is in conflict with a prior Supreme Court decision. In United States v. Barnow, 239 U.S. 74, 36 S. Ct. 19, 60 L.Ed. 155 (1915), the Court held that it was no defense under a similarly worded predecessor to § 76 and § 912 to a charge of receiving a thing of value in a pretended character that the defendant had given in return a thing of equal value.

The only other likely definition of "intent to defraud" is that used in *Lepowitch*, which the court in *Honea* rejected. The requirement of § 912 that the money or thing of value be demanded or received "in pretended character" adequately covers the possibility raised by the *Lepowitch* definition that the impersonation did not affect the actions of the person deceived. Analyzed this way, the issue in *Honea*, which the court did not discuss, was whether the defendant received money from his wife because he was supposedly a CIA agent or because he was her husband.[5]

In any event, we agree with Judge Sobeloff's observation in United States v. Guthrie, *supra*, 387 F.2d at 571:

It is an accepted canon of statutory construction that where Congress has advertently changed the legislative language the change must be given effect. This is particularly true when the revision was precipitated by a specific Supreme Court interpretation.

4. It also should be noted that Forms 8 and 9 in the Appendix of Forms to the Federal Rules of Criminal Procedure, which illustrate indictments charging violations of parts [1] and [2] of § 912, contain the allegation "with intent to defraud," but these forms are illustrative and not mandatory. Fed.R.Crim.P. 58.

5. The *Honea* court gave the following hypothetical to support its conclusion that "intent to defraud" is a requirement for an of-

fense under part [2] of § 912: "For example, an ex-Marine, FBI man, PX clerk, Revenue Officer, or law clerk desires to cash a check for which there are funds in the bank, but not being known to the cashier, he flashes his expired Government ID card." 344 F.2d at 803. Here too, the issue is not whether the bank received full value, *Barnow* bars this defense, but whether the former federal employee had his check cashed in the guise of a government employee or of a bank depositor.

. . . It cannot be assumed that Congress deleted an element theretofore regarded as essential without intending to affect the meaning of the statute.

The indictment in this case is sufficient to state an offense under § 912.

### III.

Finally, Rose claims that the questioning of him by the Assistant United States Attorney on cross-examination, which is quoted in footnote, 1, *supra* constituted an improper comment upon Rose's right under the Fifth Amendment to remain silent following arrest. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Rose relies on cases which have held that no inference of guilt can be drawn from the fact that the defendant remained silent when arrested. See, e. g., United States v. Mullings, 364 F.2d 173 (2d Cir. 1966); United States v. Lo Biondo, 135 F.2d 130 (2d Cir. 1943). The government argues that the questioning did not suggest that Rose had remained silent at the time of arrest, only that when arrested he had not told the same story he told on the stand. The government also points out that it may not be improper to impeach a defendant's testimony at trial by showing that he remained silent upon arrest on the theory that silence is inconsistent with the story told at trial. See United States ex rel. Burt v. New Jersey, 475 F.2d 234 (3d Cir.), cert. denied, 414 U.S. 938, 94 S.Ct. 243, 38 L.Ed.2d 165 (1973); United States v. Ramirez, 441 F.2d 950 (5th Cir.), cert. denied, 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971); *cf.* Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). But see Johnson v. Patterson, 475 F.2d 1066 (10th Cir.), cert. denied, 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973).

Since Rose's counsel failed to object to the examination during the trial, we need not reach the merits of whether the government may show that the defendant was silent upon arrest because that is inconsistent with the defendant's trial testimony. Ordinarily there must be a sufficient contemporaneous objection during the trial before an evidentiary matter can be raised on appeal. While in cases involving plain error affecting substantial rights we have discretion to consider matters not objected to, see United States v. Indiviglio, 352 F.2d 276, 280–281 (2d Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966), here as in *Indiviglio* we see no reason to consider this claim of error made for the first time on appeal. The relationship between Rose's failure to tell the arresting officers the story he told the jury and his right to remain silent must have seemed so remote that it escaped the notice of Rose's counsel and the district judge. Where objection is promptly made by counsel, it would usually be enough for the trial judge to instruct the jury regarding the relevant considerations and what the jury should disregard. Such an instruction would have cured any possible misconception regarding Rose's rights. In the absence of any objection at the trial, we see no reason to consider whether the cross-examination was a violation of the defendant's rights.

Affirmed.