**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jerry Wayne GRAMMER, Defendant-Appellant.**

No. 74–2804.

United States Court of Appeals, Ninth Circuit.

March 27, 1975.

675

Michael J. Brennan, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Curtis Rappe, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before CARTER and WRIGHT, Circuit Judges, and EAST *, District Judge.

JAMES M. CARTER, Circuit Judge.

Defendant Grammer appeals from the judgment of conviction, following a jury trial, of robbery of a savings and loan association and interstate transportation of forged securities, in violation of 18 U.S.C. §§ 2113(a, d) and 2314, respectively. On appeal, he alleges two prejudicial errors:

I. The disclosure to the jury by counsel for the Government of the existence of a defense fingerprint expert (not called to testify by the defense) violated defendant's privilege against self-incrimination, attorney-client privilege, and the "function and purpose of appointment of experts under 18 U.S.C. § 3006A."

II. The introduction into evidence of prison records and a prison photograph of the defendant violated his right to a fair trial.

We affirm.

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

## FACTS

On August 31, 1973, the Santa Barbara Savings and Loan Association was robbed of approximately $655.00 cash and 190 blank American Express traveler's checks. At least 32 of these traveler's checks were subsequently transported interstate, the endorsements forged, and cashed in Las Vegas, Nevada. It is for the Santa Barbara robbery and the interstate transportation of the checks that the defendant was convicted.

The evidence which tended to implicate the defendant in the robbery and subsequent interstate transportation of the checks was substantial. He was identified by a bank manager present during the robbery. The defendant's sister-in-law testified that she, her husband, the defendant, and the defendant's wife had lived in an apartment which was located two miles from the scene of the robbery. She had been asked by the defendant to obtain false birth certificates and drivers' licenses. When she refused, the defendant said he would get them himself.

A witness from the Bureau of Vital Statistics in Santa Barbara County testified that on July 30, 1973, she received a letter requesting the birth certificate for a Robert John Markmann. This letter was in the handwriting of the defendant's wife. The name Robert Markmann appeared on the signature, countersignature, and payee lines of the stolen checks which were passed in various Las Vegas gambling establishments on or about September 2, 1973.

The defendant's sister-in-law further testified that the defendant and his brother had surveilled a number of banking establishments in the area of the Santa Barbara Savings and Loan Association, had looked for and stolen a getaway car, and that the defendant had told the others that "it was too hard to burglarize a place, and that the only way we could possibly get by with it is to hold up the place." The getaway car described by the bank manager was ex-

ceedingly similar to a car stolen the same day the defendant obtained his car and which was discovered six-tenths of a mile from the defendant's apartment along the only direct route from the scene of the robbery.

About midnight of the night of the robbery, the defendant, his brother, and their wives left for Las Vegas. They registered under false names and were seen at the Show Boat Casino on the day when the stolen traveler's checks were passed. Government specialists testified that the signatures and fingerprints on the stolen checks belonged to the defendant.

## DISCUSSION

### I.

During the examination of the Government's (FBI) fingerprint specialists, Government counsel brought out, over defense objection, the fact that the fingerprint evidence in the case had been examined for two to three hours by a defense expert, Mr. Lee Smith. This expert was never called by the defense.

■ There was nothing impermissible with respect to this procedure, and the Government's subsequent argument to the jury that its own expert's identification of the defendant's fingerprints on the stolen checks was uncontradicted despite the defense expert's opportunity to study the same prints, was also proper.

■ First, defendant's 18 U.S.C. § 3006A[1] argument fails because that section and the cases interpreting it were intended at the most to provide indigent defendants with an expert whose *report* may be immune from discovery by the Government unless the expert testifies. *See* Fed.R.Crim.P. 16(c); United States v. Milano, 443 F.2d 1022, 1027–1028 (10 Cir. 1971). There is no authority for precluding the Government

from revealing the existence of the *expert himself.* And, in the present case, the defendant voluntarily furnished a copy of the report to the Government, thereby waiving any § 3006A, attorney-client, or Fifth Amendment privilege he might have. *See* United States v. Gurtner, 474 F.2d 297, 299 (9 Cir. 1973) (attorney-client).

■ Furthermore, defense counsel objected solely to testimony concerning the *report* made by its expert, not to the existence of the expert himself. The report was not introduced into evidence. This failure to specifically object to testimony eliciting the fact that the defense had an expert (including the failure to specify the *grounds* for the objection), also waived any privilege that might have existed. United States v. Lazarus, 425 F.2d 638, 642–645 (9 Cir. 1970) (self-incrimination).

■ Nor was the argument to the jury improper. In fact, defense counsel conceded the right of the Government's attorney to comment upon the failure of the defense to call its own fingerprint expert to impeach the Government's expert. The Government's attorney did no more than suggest that the failure of the defense expert to testify left the testimony of the Government's expert uncontradicted. This in no way commented upon the *defendant's* failure to testify. In Ignacio v. People of Territory of Guam, 413 F.2d 513, 521 (9 Cir. 1969), the court stated: "The closing comment of the prosecution to which appellants objected pertained to the failure of the attorneys for appellants to call their own ballistics expert. This was in no way directed to the failure of the appellants to testify on their own behalf. The appellants were not referred to, either directly or indirectly. There clearly was no prejudicial misconduct." Likewise, there was no prejudicial misconduct in the present case.

---

1. 18 U.S.C. § 3006A(e)(1) provides in pertinent part:

    "Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application."

## II.

The Government, as part of its case in chief, called as a witness a Correctional Treatment Specialist at the United States Penitentiary at Lewisburg, Pennsylvania, to identify certain documents from the defendant's prison file. These documents contained samples of the defendant's handwriting, and were admitted into evidence by the court because the Government's handwriting expert testified, out of the presence of the jury, that these prison handwriting samples were necessary to his testimony identifying the "Robert Markmann" signatures on the stolen checks as having been written by the defendant. The defendant contends that the introduction of these documents unnecessarily put the defendant's prior record before the jury.

█ In Fernandez v. United States, 329 F.2d 899, 908 (9 Cir. 1964), cert. denied, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40, this court stated the general rule that "[r]elevant evidence which tends to prove a material fact in the case on trial is admissible even though it incidentally shows that the accused committed another offense at a different time and place." The relevance must outweigh the prejudice flowing from the fact that it shows misconduct not related to the transactions involved in the present case. *Id.*

█ Clearly, the identity of the person who had signed the stolen checks was of the highest relevance. As noted *supra,* the Government's handwriting expert stated that he could not identify the signature on the stolen checks as that of the defendant without reference to the handwriting samples in the prison records. This was due to the fact that the defendant had apparently intentionally distorted samples of his handwriting

that the court had ordered him to make. The samples in his prison file were the only available samples made by the defendant prior to his arrest.

The prosecution made no reference to or use of the prison file except as was necessary to indicate that the samples contained therein were made by the defendant. There was no discussion of the defendant's prior record or any details of that record. Under these circumstances, the district court was warranted in concluding that the probative value of the evidence far outweighed whatever prejudice may have come from the disclosure that the defendant had been previously incarcerated. *See Fernandez, supra;* United States v. Miller, 381 F.2d 529, 537 (2 Cir. 1967). *See also* Rule 403, Rules of Evidence for United States Courts and Magistrates (effective July 1, 1975).[2]

After the Correctional Treatment Specialist had testified that the samples had been obtained from the defendant's prison file, defense counsel, on cross-examination, attacked their authenticity by eliciting the fact that the witness had not seen the defendant write the samples. Defense counsel's questioning further implied that since the witness did not know the defendant personally, he could not be sure that the prison documents were those of the defendant. To rebut this implication, the Government's attorney had the witness produce a photograph from the file and identify it as a picture of the defendant. The defendant contends that this was error in that it unnecessarily apprised the jury of the defendant's prior record and thereby "vitiated his right to be presumed innocent until proven guilty."

██ This contention must also fail. It was defense counsel's attempt, on

---

2. Although the obvious relevancy of the evidence itself warranted its admissibility, the court also attempted to avoid any possible prejudice by first ascertaining that the prison samples were necessary to the expert's testimony, and then reiterating the Government's offer to stipulate that the samples had been made by the defendant, thereby obviating the need for any reference to where they had been

obtained or that the defendant had a prior record. Although defense counsel's refusal of the offer is understandable, in light of that refusal and the expert's need for the samples, the Government had no choice but to lay the proper foundation by calling the Correctional Treatment Specialist. *See Miller, supra,* 381 F.2d at 537.

cross-examination, to show that the file might not belong to the defendant that required the use of the photograph. Whereas it is clearly improper for the Government to introduce evidence about a defendant's criminal activity merely to show a general criminal disposition, "if the [evidence] serves a further purpose, such as to reveal the defendant's capacity, habit, plan, knowledge, intent, motive, or *identity* with respect to the crime of which he is charged . . . the [evidence] is admissible in spite of its reference to previous criminality." United States v. Frascone, 299 F.2d 824, 828–829 (2 Cir. 1962) (emphasis added), cert. denied, 370 U.S. 910, 82 S.Ct. 1257, 8 L.Ed.2d 404.

In the present case, the identity of the person who had forged the name "Robert Markmann" on the checks was the primary issue at trial. A handwriting expert had testified that the handwriting in the prison file of one Jerry Wayne Grammer matched the handwriting on the checks. The necessary implication of defense counsel's subsequent questions was that the file or documents therein might not pertain to the defendant. The prison photograph in the file, identified as a picture of the defendant, was introduced to negate this implication, not to show the defendant's general criminal disposition. With respect to a similar situation, the Second Circuit stated:

> "In his questions to both narcotics agents upon cross-examination, defense counsel was apparently raising the issue of the wrongdoer's identity. Therefore, although the reference to appellant's pictures in the files of the law enforcement agencies suggested to the jury that the defendant had had previous clashes with the law, it was permissible, inasmuch as the issue had been created by the defense, for the witnesses, in order to explain how they could identify appellant, to testify that the pictures served to confirm their belief that the individual they personally observed was appellant. Cf. Tucker v. United States, 214 F.2d 713 (9 Cir. 1954)."

United States v. Frascone, *supra,* at 829. So also in the present case the prosecution was entitled to introduce relevant evidence to rebut an inference created solely by defense counsel's cross-examination.

The judgment of the district court is affirmed.