**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert E. HELINA, Defendant-Appellant.**

**No. 74–3453.**

United States Court of Appeals,
Ninth Circuit.

March 4, 1977.

John W. Flynn, argued, Stern, Gayton, Neubauer, Seattle, Wash., for defendant-appellant.

Stan Pitkin, U. S. Atty., Marvin L. Gray, Asst. U. S. Atty., argued, Seattle, Wash., for plaintiff-appellee.

Before ELY and WRIGHT, Circuit Judges, and LUCAS,* District Judge.

## OPINION

LUCAS, District Judge:

### I. FACTS

Defendant was indicted on three counts of income tax evasion, in violation of 26 U.S.C. § 7201, and four counts of wilfully subscribing a false income tax return, in violation of 26 U.S.C. § 7206(1). Defendant was convicted by a jury on all seven counts. He now appeals from the judgment of conviction and urges as error:

(1) That the prosecution was permitted to comment upon the fact that he chose to exercise his fifth amendment right in de-

clining to turn over his books and records to Government agents who were conducting the criminal investigation of his tax returns.

(2) That the trial court admitted into evidence the Government's bank deposit analysis.

In January, 1971, the defendant, Helina, was contacted by Revenue Agent Marx, who had been assigned the audit of Helina's 1969 tax return. At the end of March, 1971, the audit of Helina's tax returns shifted to a criminal investigation and Marx referred Helina's case to the Intelligence Division of the Internal Revenue Service. On August 25, 1971, Special Agent O'Boyle of the Intelligence Division of the Internal Revenue Service met with Helina and Marx. According to O'Boyle, he immediately advised Helina that a criminal tax investigation was in progress and that Helina had the right not to talk to or furnish the agents with any books and records. Throughout the investigation, Helina refused to produce his business records.

Prior to trial, defense counsel made a motion *in limine* to exclude any evidence that Helina had exercised his fifth amendment rights and had refused to provide the Internal Revenue Service with his books and records. The trial court precluded direct examination by the Government on this issue but, in case the subject was raised by the defendant during the trial, refused to prevent cross-examination and rebuttal on the issue.

At the trial, the Government was forced to use the net worth method of proof [1] and a bank deposit analysis.[2] Evidence of the

---

\* Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation.

1. This method of proof requires the Government to show the net worth of the taxpayer as of the beginning and the end of the taxable year and the non-deductible expenditures made by him that year. If the increase in his net worth, plus his non-deductible expenditures, exceed his reported income for the year and such excess is not attributable to gifts, devises, loans or other non-taxable receipts, the conclusion may be drawn t̵ ̵ the taxpayer realized

income which he failed to report. *Papadakis v. United States*, 208 F.2d 945 (9th Cir. 1953); *McFee v. United States*, 206 F.2d 872 (9th Cir. 1953).

2. The bank deposit analysis has been described as follows:

. . . the government totals all bank deposits, and, after the non-income deposits are excluded, *United States v. Lacob, supra*, 416 F.2d [756] at 759 (7 Cir.), and the amounts on deposit prior to the tax years in question have been deducted, *see Price v. United States*, 335 F.2d 671, 677 (5th Cir. 1964), the

bank deposit analysis, in the form of testimony by Special Agent Huntsman and Mrs. Clark, Helina's assistant, was admitted over the objection of defense counsel.

The thrust of Helina's defense at trial was that although the Government's net worth analysis showed an increase in net worth during the years in question, he was not guilty of any of the crimes charged as the increases were due to his negligent bookkeeping and were not a result of his intent to evade his income taxes.

## II. COMMENT ON HELINA'S EXERCISE OF HIS FIFTH AMENDMENT PRIVILEGE

■ Primarily, although recent United States Supreme Court cases[3] and cases from other circuits[4] perhaps intimate a different result, we initially conclude that Helina was within his rights, granted pursuant to fifth amendment protections against self-incrimination, to refuse to produce his books and records during the Internal Revenue Service criminal investigation. Additionally, the Government does not challenge Helina's invocation of his fifth amendment rights.

■ The fifth amendment commands that "No person . . . shall be compelled . . . to be a witness against himself." It has been the law for ninety years that compelled production of documents falls within the ambit of the privilege against self-incrimination. *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). In *Boyd*, the Supreme Court held that production of an invoice on goods belonging to defendants could not be compelled under the fourth and fifth amendments and stated: "[W]e have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself." *Boyd v. United States, supra*, 116 U.S. 633, 6 S.Ct. 534. This sound legal principle has been applied by this circuit to cases involving the production of tax

circumstantial inference properly permitted to arise is that all remaining deposits constitute taxable income. *United States v. Doyle*, 234 F.2d 788, 793 (7th Cir.), *cert. denied*, 352 U.S. 893, 77 S.Ct. 132, 1 L.Ed.2d 87 (1956). The government then includes any additional income which the taxpayer received during the tax year but did not deposit in any bank account, and the resulting total would be the taxpayer's reconstructed gross income. From this amount, the appropriate tax deductions, exclusions, exemptions and credits to which the taxpayer is entitled are taken, leaving a net income upon which is computed the amount of tax due. This is then compared with the actual tax paid in the years in question. *See Percifield v. United States*, 241 F.2d 225, 229–230 n. 7 (9th Cir. 1957); *Morrison v. United States, supra*, 270 F.2d [1] at 2–3 (4 Cir.). *United States v. Morse*, 491 F.2d 149, 152 (1st Cir. 1974).

3. Two recent Supreme Court cases have narrowly interpreted the fifth amendment's application to the production of a defendant's business records. In the recent case of *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Court held that an attorney's production, pursuant to a lawful summons, of his client's tax records in his hands does not violate the fifth amendment privilege of the taxpayer

because enforcement against a taxpayer's lawyer would not 'compel' the taxpayer to do anything—and certainly would not compel him to be a 'witness' against himself. *Id.* at 1573.

In the more recent case of *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the Court held that the search of an individual's office for business records, their seizure, and subsequent introduction into evidence does not offend the fifth amendment's prescription that

[n]o person . . . shall be compelled in any criminal case to be a witness against himself.

Both cases, however, recognized a distinction which is clearly applicable in the present case: A party is privileged from producing the evidence but not from its production. *Johnson v. United States*, 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913).

4. *See Smith v. United States*, 236 F.2d 260 (8th Cir.), *cert. denied*, 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118 (1956); *Beard v. United States*, 222 F.2d 84 (4th Cir.), *cert. denied*, 350 U.S. 846, 76 S.Ct. 48, 100 L.Ed. 753 (1955); *United States v. Mousley*, 201 F.Supp. 510 (D.C.Pa.1962), *aff'd*, 311 F.2d 795 (3rd Cir. 1963); *Garner v. United States*, 501 F.2d 228, 236 (9th Cir. 1972), *aff'd*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976).

records. *United States v. Cohen*, 388 F.2d 464 (9th Cir. 1967).[5]

Having established that Helina was entitled to exercise his fifth amendment rights in the manner in which he did, the next question is whether the prosecutor improperly commented on Helina's invocation of those rights. To answer this, it must be determined what language will constitute "comment."

■ On five occasions during the course of trial, it was evident that investigators did not have access to all of Helina's records. The first exchange, which took place on direct examination,[6] made no reference to why the records were not available. This was in no way a comment upon the *defendant's* failure to produce. *See United States v. Grammer*, 513 F.2d 673, 676 (9th Cir. 1975). Any connection between this testimony and defendant's fifth amendment privilege was so remote as to escape the notice of Helina's counsel and the judge.

The conclusion that this was not a comment is strengthened by noting that the judge had already granted Helina's *in limine* motion as to direct examination by the prosecutor. The failure of the judge to make a ruling at this juncture, and of defense counsel to call it to the judge's attention, indicates that no prejudicial comment had been made.

■ Later in the trial, during the prosecutor's cross-examination of Helina, the following exchange took place:

"Q: Now, these particular checks [in exhibit], how long had you had these checks?

5. *See also Garner v. United States*, 501 F.2d 228, 236 (9th Cir. 1972), *aff'd*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976); *United States v. Judson*, 322 F.2d 460, 464 (9th Cir. 1963).

6. The testimony was:
Q: Okay, Mr. Huntsman, if I can direct your attention now back to the approximate spring of 1972, did you at that time receive an assignment to conduct an investigation with respect to Mr. Helina's case?

A: Since—I imagine since they came back on the bank statements.

Q: How long has that been?

A: This is 1967 through 1970.

Q: *So you had them that period of time*?

A: Yes.

Q: Did you ever lose them?

A: Not that I know of.

Q: Do you recall Mr. O'Boyle asking you particularly about these checks?

A: I recall Mr. O'Boyle calling me on the telephone and asking me if I cashed a check for $5,000.00 . . and what it was for . . .

Q: In addition to that check and other checks, *did you have some of these records available also when Mr. O'Boyle was asking you about those that you brought in here today?*

A: I think Mr. O'Boyle asked me—[Objection by defense counsel. The basis for this objection is unclear; however, it does not appear to be upon fifth amendment grounds.]

The Court: This is cross-examination on this subject on this particular check.

[Prosecutor]: I was going to go into the record of Mr. Helina's records, also, your Honor.

The Court: Objection denied.

Q: Isn't it a fact during the periods that Mr. O'Boyle talked to you and also Mr. O'Leary, they asked you on a number of occasions about your business records, didn't they?

A: That's not true.

Q: They never asked you?

A: Yes, I did.

Q: And as part of your investigation in this case, did you have access to the taxpayer's books and records?

A: No, I did not.

(Tr. 328)

Not only was no contemporaneous objection made by defense counsel but, in his appellate brief, defense counsel did not object to this testimony.

A: The only man that ever asked me to see anything in my office was Mr. Marx, and I showed him everything he asked for, with the exception of Mr. O'Boyle, which was two years after this investigation began and he asked me for all of my cancelled checks from 1963 through 1970. That is the time that I sought legal counsel and I was told not to give them to the Internal Revenue Service, and at no other time did they ask me for the records.

. . . . .

Q: *Well during this period of time in 1971 and '72, you did have your business records available to you, did you not?"* (Tr. 540–42) (Emphasis added).

Crafty questioning may constitute "comment" despite its obliquity. In *Johnson v. Patterson*, 475 F.2d 1066 (10th Cir.), *cert. denied*, 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973), the court found that the question, "Now, Mr. Johnson, you didn't tell the police this, did you?", constituted comment, reasoning that the jury could as easily draw prejudicial inferences even where the comment was not direct. *Id.* at 1067–68.

In *United States v. Rose*, 500 F.2d 12 (2d Cir. 1974), *vacated* 422 U.S. 1031, 95 S.Ct. 2648, 45 L.Ed.2d 688, *aff'd*, 525 F.2d 1026 (2 Cir. 1975), *cert. denied*, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976), however, defendant was asked several times on cross-examination whether he told his story to the police upon arrest. 500 F.2d 14, n. 1. This was not held to be improper comment.

Here, the prosecution questioning could have been answered by "Yes" or "No" responses for the most part. Instead, defendant volunteered the information that legal counsel advised him to use the fifth amendment and withhold his records.

Assuming *arguendo*, without deciding, that this was improper prosecutorial comment, it must be noted that defense counsel failed to object to this exchange.[7] His *in limine* motion having been denied with respect to cross-examination and rebuttal testimony, defense counsel once more bore the burden of making a proper objection at the appropriate time.

■ Although it is error for the prosecution to comment on an accused's pretrial silence for purposes of impeaching his trial testimony in a situation where the earlier silence is not clearly inconsistent with the subsequent testimony (*Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Fowle v. United States*, 410 F.2d 48 (8th Cir. 1969)), for the reasons that follow, we affirm the judgment of the district court.

■ Objections not made at trial cannot be raised on appeal to the court of appeals absent the presence of plain error. *See, e. g., United States v. Rose, supra*, 500 F.2d at 17; *United States v. Machado*, 457 F.2d 1372, 1375 (9th Cir.), *cert. denied*, 409 U.S. 860, 93 S.Ct. 96, 34 L.Ed.2d 106 (1972); Fed.R.Crim.P. 52; Fed.R.Evid. 103(d).

■ With regard to this second exchange, it is our conclusion that it did not amount to plain error. This holding is sup-

---

7. The record does indicate that Helina's counsel made a vague objection, which was not based on fifth amendment grounds, during the critical cross-examination of Helina. The exchange went as follows:

Q: In addition to that check and other checks, did you have some of these records available also when Mr. O'Boyle was asking you about those that you brought in here today?

A: I think Mr. O'Boyle asked me—

[Defense counsel]: The question was with respect to Mr. O'Boyle talking about these checks, I don't recall Mr. O'Boyle

testifying about anything else other than he did ask him about the particular accounts, and what other records we are talking about, I don't recall Special Agent O'Boyle testifying—

The Court: This is cross-examination on this subject on this particular ˙check.

[Prosecutor]: I was going to go into the records of Mr. Helina's records also, Your Honor.

The Court: Objection denied.

(Tr. 546)

This objection is, however, insufficient to preserve the issue for appeal.

ported by the fact that defense counsel, during his recross-examination of Agent Huntsman, opened the door and invited discussion of Helina's failure to turn over his records. This portion of the record reads as follows:

"Q: You indicated that you had made no allowance in 1970 for any check cashing whatsoever in the tavern because you didn't have Mr. Helina's checks, is that what you said?

A: Yes.

Q: Well, would it really perhaps be helpful if you had the customers' cancelled checks . . .?

A: No.

Q: That wouldn't have been helpful?

A: Would you please ask the question again?

Q: Well, certainly wouldn't it have been helpful if, for example, in one month you had all the checks of all customers that deposited into the tavern, that would have been helpful?

A: It would have been more helpful to have the taxpayer's checks." (Tr. 387)

By this colloquy, defense counsel, at best, sought to discredit the Government's case by suggesting to the jury that the Government had failed to document its case and, at worst, was intimating to the jury that Helina had fully cooperated with the Government agents. Having thus raised the subject of the Government's documentation of its case, Helina opened the door to a full and not just a selective development of that subject. *See United States v. Fairchild*, 505 F.2d 1378 (5th Cir. 1975). He cannot be heard now to complain of discus-sion of a subject he introduced into the proceedings.

■ The third and fourth relevant exchanges occurred during rebuttal testimony by Agents O'Boyle and O'Leary.[8] The prosecution called these rebuttal witnesses to contradict Helina's cross-examination testimony that the agents had not on more than one occasion asked him about his tax records.

In *Martin v. United States*, 400 F.2d 149, 153 (9th Cir.), *cert. denied*, 393 U.S. 987, 89 S.Ct. 466, 21 L.Ed.2d 449 (1968), this court held that rebuttal evidence was permissible to contradict defendant's testimony that he had told federal agents his exculpatory story at the time of his arrest. This case falls within the *Martin* rule.

■ Finally, the prosecution, during closing argument, commented on Helina's failure to produce documents prior to putting on his defense at trial. Defense counsel specifically objected to this comment. (Tr. 655)

We see no error but, if it be such, it was certainly harmless. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). As the Court stated in *Harrington*, a departure from constitutional procedures does not result in automatic reversal. Here, the impact of the prosecutor's statement was lessened by the exchanges that had occurred earlier in the trial regarding Helina's seeking and following the advice of an attorney on whether to turn over certain tax records to the agents.

We therefore affirm the district court as to this issue.

---

**8.** There were no contemporaneous objections on fifth amendment grounds to this rebuttal testimony. However, after argument and after the jury had retired, defense counsel objected and called attention to his prior *in limine* motion as follows:

> I have a comment with respect to the objection to cross-examination of rebuttal. [*and* rebuttal?] Even before the jury was selected, in chambers we made known our concerns in

this area and made a motion in limine. We didn't want to be driving the point home in front of the jury an objection to questions with respect to this evidence if it was going to be admitted anyway, and at that point in time it was in our mind clear that the court had decided that this was proper.

> . . . [T]his does not indicate any concession.

(Tr. 684)

## III. ADMISSION OF THE IRS BANK DEPOSIT ANALYSIS

██ As previously indicated, the Government used the net worth method of proof and a bank deposit analysis to prove the offenses with which Helina was charged.[9] Defense counsel objected to the admissibility of the bank deposit analysis evidence on the grounds that the Government failed to eliminate all non-income deposits from gross receipts. Appellant argues that the Government's bank deposit analysis was an "arbitrary and speculative process."

In support of his position, appellant cites the seminal case of *United States v. Morse*, 491 F.2d 149 (1st Cir. 1974). In *Morse*, the First Circuit reversed the defendant's conviction of wilful tax evasion, held that absent some primary evidence to support the agent's bank deposit analysis his testimony was merely inadmissible hearsay, and established the following three prerequisites to the admissibility of a bank deposit analysis:

"In order to legitimately avail itself of this approach, the government must initially introduce evidence to show (1) that, during the tax years in question, the taxpayer was engaged in an income producing business or calling; (2) that he made regular deposits of funds into bank accounts; and (3) that an adequate and full investigation of those accounts was conducted in order to distinguish between income and non-income deposits." *United States v. Morse*, 491 F.2d 149, 152 (1st Cir. 1974).

Appellant's reliance upon the third prong of the *Morse* test above is misplaced, however, under the facts of the present case. There is ample evidence on the record to demonstrate that the Government conducted an extensive investigation of Helina's bank accounts in order to distinguish between income and non-income deposits. First, the testimony of Mrs. Clark was presented as primary evidence of the Internal Revenue Service's basis for estimating the percentage of Lithotype receipts paid into the Lithotype bank account. Second,

there was testimony that an effort was made to identify specific deposits that might have been made from the tavern check cashing into the Lithotype account by checking the identification numbers on the checks. Finally, on two occasions, the trial judge asked defense counsel what more the Internal Revenue Service agent could have done, and his only response was that the agent knew about the check cashing and should have investigated further. The trial court specifically found that the agent had done all he could to investigate and eliminate the non-income sources of the defendant's bank accounts. The finding is not clearly erroneous but is amply supported by the record. We must, therefore, affirm as to this issue.

The judgment is affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent.

Our court has unequivocally held that it is constitutionally impermissible for the prosecution to use against an accused his pretrial silence, maintained in the exercise of his privilege against incrimination, unless the accused waives that privilege by offering "any testimony as to the contents of any conversation" at the relevant time in question. *Fowle v. United States*, 410 F.2d 48, 55 (9th Cir. 1969). The present case is controlled by *Fowle*. Accordingly, Helina's conviction should be reversed if the District Court erroneously allowed the prosecution to question witnesses regarding their "lack of access" to Helina's records.

With all due respect, I submit that the first exchange, found in footnote six of the majority's opinion, did, without question, involve a prejudicial comment upon Helina's privileged refusal to supply his personal records. *United States v. Grammer*, 513 F.2d 673, 676 (9th Cir. 1975), cited by the majority as support for its proposition that the first colloquy did not involve a comment on the exercise of Helina's fifth amendment privilege, is inapposite. In *Grammer*, the prosecutor remarked during closing argu-

---

**9.** *See* notes 1 & 2 and accompanying text, *supra*.

ment that the defendant's failure to call an expert witness left the testimony of a Government's witness uncontradicted. The court held that this remark "in no way commented upon the *defendant's* failure to testify." *Id.* (emphasis in original). Thus, *Grammer* differs obviously and materially from the case now under review. Here, it is clear that the interchange with Agent Huntsman was intended for the jury to appreciate that the defendant had not authorized access to his personal records.

The majority attempts to bolster its conclusion that this interchange did not involve an impermissible "comment" by emphasizing defense counsel's failure to record a specific objection. The majority's perspective ignores the context of the colloquy and, in effect, converts Helina's constitutional privilege of silence to a meaningless technicality. While it is true that Helina's counsel did not object every time the prosecution improperly raised the issue of Helina's refusal to supply his records, the significant point is the very fact that the defense attorney had made a motion *in limine*, prior to the impaneling of the jury, requesting the exclusion of all evidence concerning Helina's invocation of his fifth amendment right. Following the jurors' selection, defense counsel reiterated his motion in open court (out of the presence of the jury), thereby evidencing an undeniable intent that the motion would serve as a continuing objection throughout the trial.[1] (Tr. 58).

Thereafter, at a hearing in the midst of the prosecution's case-in-chief, defense counsel objected to the prosecutor's request that he be permitted to elicit testimony from government witnesses in respect to their "lack of access" to Helina's records. Helina's attorney remarked:

"My reaction is exactly the same as it was yesterday when Your Honor made the ruling [that the prosecution could not introduce evidence of Helina's silence in its case-in-chief]. I think essentially this is just a back door attempt to do the same thing." (Tr. 116).

When the trial judge later stated that he did not "see any constitutional problem" (Tr. 119), defense counsel further responded:

" . . . [I]t's just cumulative and getting into an area that is very dangerous . . . and for him [the special IRS agent] to go back and rehash essentially what Mr. Marx already testified to as to why the net worth method is used is again just essentially a subtle back door method of getting the facts in that for some reason or another, the special agent didn't have the books and records." (Tr. 119–20).

The court then ruled that the prosecution's witnesses would be allowed to testify concerning their inability to review Helina's records.

It was following this hearing that the colloquy between the prosecutor and Agent Huntsman occurred. I simply cannot agree that the significance of this interchange is dissipated because defense counsel failed to make a contemporaneous objection. Only shortly before Agent Huntsman testified, Helina's counsel had expressed to the judge his specific objection to the admission of such evidence. The judge nevertheless decided to admit it. In light of the defense attorney's motion *in limine* and his objection to the particular line of questioning that the prosecutor ultimately pursued with Agent Huntsman, it is, in my view, manifestly unreasonable and unfair to hold that this colloquy did not give rise to a prejudicial comment of the most flagrant character.

Because we are here concerned with one of the most basic and substantial rights enjoyed by all citizens of this country, we should, I think, have a duty to look a little beyond procedural irregularities. Our court has never thought itself to be inextricably constrained by the failure of counsel always

---

1. In Helina's motion for a new trial, his defense counsel again emphasized the view, which I think correct, that the motion *in limine* served as a continuing objection, making it unnecessary for him to object time after time, repeatedly reasserting Helina's privilege against self-incrimination. *See* footnote 9 *supra*.

to raise an objection at a precise time. When we find plain error affecting substantial rights, we may, should, and often do consider the issue even though no objection whatsoever has been made, either during a trial or even on the appeal. *Beadnell v. United States*, 303 F.2d 87 (9th Cir. 1962). As I see it, the trial court's ruling in this case, allowing the prosecutor to raise the question of the agent's access to Helina's records, is pivotal. Under our decision in *Fowle, supra,* this ruling was egregious error, error of constitutional dimension. Surely, it cannot be held that the error was "harmless beyond a reasonable doubt," *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

I would reverse.